[No. 33308. Department One. April 19, 1956.]

ROY T. EARLEY et al., Respondents, v. THE STATE OF WASHINGTON, Appellant.[1]

[1]Reported in 296 P. (2d) 530.

*The Attorney General* and *Keith Grim, Assistant,* for appellant.

*Henderson, Carnahan, Thompson & Gordon (Harry Sager,* of counsel), for respondents.

HAMLEY, C. J.—Plaintiff building contractors brought this action against the state to obtain a refund of use taxes assessed and paid with respect to certain lumber purchased by plaintiffs. Judgment was rendered for plaintiffs, and defendant appeals.

The question for decision is this: Is a construction contractor liable for the state use tax on the value of purchased lumber where (a) the contractor does not pay a retail sales tax on the purchase price; (b) the lumber is completely consumed in making forms, so that it does not become an ingredient or component of the completed structure; and (c) the price paid to the contractor by the owner includes a retail sales tax on the value of such lumber?

The transactions concerning which the tax was assessed occurred in the years 1948 to 1951. The statutes under which the state assessed the tax are Laws of 1943, chapter 156, § 8, p. 501, and Laws of 1949, chapter 228, § 7, p. 829, amending the 1943 statute (now codified as RCW 82.12.020).

A requisite for the imposition of the use tax under either the 1943 or 1949 act is that the form lumber be "purchased at retail" by the contractor.

The title containing the use tax (RCW chapter 82.12) does not have a definition of "retail" or "retail sale." However, RCW 82.12.010 (5) states that the meaning ascribed to words and phrases in the titles containing the

business and occupation tax (RCW chapter 82.04) and the retail sales tax (RCW chapter 82.08), in so far as applicable, shall have full force and effect with respect to the taxes imposed under the provisions of the title containing the use tax. RCW 82.04.050 defines "sale at retail" and "retail sale."

Appellant relies upon the first paragraph of RCW 82.04-.050, which, in so far as here material, reads as follows:

" 'Sale at retail' or 'retail sale' means every sale of tangible personal property (including articles produced, fabricated, or imprinted) *other than* [1] a sale to one who purchases for the purpose of resale as tangible personal property in the regular course of business or [2] for the purpose of consuming the property purchased in producing for sale a new article of tangible *personal* property or substance, *of which such property becomes an ingredient or component.* . . ." (Italics and bracketed numerals ours.)

The form lumber sold to the contractors by their supplier was "tangible personal property." The contractors did not purchase it for the purpose of resale as tangible personal property or for the purpose of producing a new article of tangible "personal" property of which such lumber became an "ingredient or component." Therefore, if we look only to the first paragraph of RCW 82.04.050, it might well be that the purchase of this form lumber from the supplier must be regarded as a "retail sale."

We cannot, however, overlook the second paragraph of RCW 82.04.050, for it deals specifically with the tax to be applied with respect to the consumption of tangible personal property in constructing a building. In so far as here material, the second paragraph reads:

"The term 'sale at retail' or 'retail sale' shall include the sale of or charge made for tangible personal property consumed . . . in respect to . . . (2) the constructing . . . or improving of new or existing buildings or other structures under, upon, or above real property of or for consumers. . . ."

The terms of this second paragraph indicate that the charge made by the contractor and paid by the owner con-

stitutes a "sale at retail" or "retail sale" of all tangible personal property (including form lumber) consumed in constructing the building. We do not believe that the legislature intended that there should be two retail sales (both taxable as such) with respect to the same form lumber— first, when the supplier sells the lumber to the contractor, and second, when the contractor collects his charge from the building owner.

We therefore hold that the second paragraph of RCW 82.04.050, dealing with this particular kind of transaction (consumption of tangible personal property in constructing a building) controls over and modifies the general definition set out in the first paragraph of RCW 82.04.050.

The legislative history of these two paragraphs confirms our view of the legislative intent. It was in 1935 that the legislature first provided for a retail sales tax and a compensating or use tax. Laws of 1935, chapter 180, p. 706. In this original act, the terms "sale at retail" and "retail sale" were so defined as to include all sales of tangible personal property to persons "who use such property in the business of erecting buildings. . . ." Laws of 1935, chapter 180, § 5 (d), p. 711. Hence, the sale of such form lumber *to* the contractor was originally classed as a retail sale.

This same provision was retained in the 1937 and 1939 amendments of the act. Laws of 1937, chapter 227, § 2, p. 1140; Laws of 1939, chapter 225, § 2, p. 979. In all of these acts, the legislature apparently felt it necessary to use the specific language quoted above in order to subject contractors to a retail sales tax on tangible personal property purchased for use in erecting buildings. This is worthy of note, inasmuch as each of those acts also contained a general definition of "retail sale," such as is now incorporated in the first paragraph of RCW 82.04.050, upon which appellant relies.

In 1941, the legislature dropped the special definition under which sales of tangible personal property *to* contractors, for use in erecting buildings, were classed as retail sales. At the same time, the legislature added language which made the *owner* liable for a retail sales tax on the

compensation paid to a contractor for erecting buildings. Laws of 1941, chapter 178, § 2 (d), p. 483. This compensation, of course, included reimbursement to the contractor for form lumber consumed in the construction work.

The exact change in language by which these results were achieved by the 1941 legislature is pointed out in *Klickitat County v. Jenner,* 15 Wn. (2d) 373, 130 P. (2d) 880, and need not be repeated here. Commenting upon the significance of this change in the statutes, we there said:

"It will be noted that, by its 1941 amendment to the revenue act, the legislature, in effect, excluded from the 'retail sale' category the sale of tangible personal property to a building contractor and brought within that category the repairing or otherwise altering or improving, and so forth, of real property 'of consumers or for consumers.'

. . .

"We think that the legislature, by its various amendments of the revenue act above outlined, clearly indicated its intention to exempt from payment of the retail sales tax building contractors who repair or improve the real property of others, and to impose the tax upon the persons for whom the services are performed by the contractor. Such legislative intent is evidenced by the deletion of sales of materials to building contractors (in the performance of public improvement contracts, as well as others) from the definition of a 'retail sale' in the 1941 statute and by the inclusion, in that definition, of 'repair, alteration, improvement,' and so forth, of *real property* of consumers or for consumers." (pp. 377, 378.)

The *Klickitat* decision was announced on November 12, 1942. The 1943 legislature, apparently content with the construction placed upon the act in the *Klickitat* case, rewrote the definition of "retail sale" to more clearly express that viewpoint. Laws of 1943, chapter 156, § 2, p. 490. The definition was then, for the first time, divided into two paragraphs, as it is at present. The general definition, upon which appellant relies and which in substance has always been in the act, was placed in the first paragraph. The particular definition was placed in the second paragraph, but was reworded to expressly include within the definition,

" . . . the constructing, repairing, decorating or im-

proving of new or existing buildings or other structures under, upon or above real property of or for consumers . . ."

At the same time (Laws of 1943, chapter 156, § 2 (r), p. 495), the definition of "consumer" was changed so that, instead of expressly including building contractors, as in the 1941 definition (Laws of 1941, chapter 178, § 2 (r), p. 487), it expressly included the owner, lessee, or person having the right of possession of real or personal property on which a building was being constructed.

In 1949 (Laws of 1949, chapter 228, § 7), the words "as a consumer" were added to the general statute imposing a use tax (now RCW 82.12.020), thereby specifying an additional factor which must be found to exist before such a tax could be imposed.

As before indicated, we regard this legislative history as revealing a legislative intent to shift the incident of retail sale, in the contracting situation, from the sale *to* the contractor to the sale *by* the contractor. It follows that the form lumber was not "purchased at retail" by the contractor. As before indicated, this is a requisite for the imposition of the use tax.

Appellant argues that the *Klickitat* case is distinguishable; that the language we have quoted from that opinion is *dictum;* and that such language incorrectly states the law.

On the point here in question, the *Klickitat* case is not distinguishable, since it was concerned, as we are in this case, with the statutory meaning of the term "sale at retail" or "retail sale." The quoted language is not *dictum*, for it reveals the rationale of that decision.

Appellant's argument that the *Klickitat* language incorrectly states the law starts with the assertion that the general definition set out in the first paragraph of RCW 82.04.050 is broad enough to cover sales of form lumber to contractors. It is reasoned from this that the statement to the effect that the legislature intended to exempt contractors from payment of the retail sales tax in connection with the improvement of real property, is too broad. But this process of reasoning calls for the construction of the first paragraph

of RCW 82.04.050 as if the second paragraph did not exist. The two must be read together, and the second, which deals with the particular, must prevail over the first, which is general. The *Klickitat* language is not too broad.

Appellant argues that no "sale" of the form lumber by the contractor to the owner occurred, because there was no "transfer of ownership of, title to, or possession" of the form lumber, as required under the definition of "sale," as given by RCW 82.04.040. But the latter statutory provision also states that a "sale" includes "any activity classified as a 'sale at retail' or 'retail sale' under RCW 82.04.050." As we have seen, and as appellant does not deny, the latter section does include the charge made by the contractor to the owner for the form lumber used in constructing a building.

Appellant maintains that the exemption of respondents from a sales or use tax on form lumber requires reasoning which should or would also exempt contractors, manufacturers, retail merchants, and others from such a tax on a wide variety of items purchased for consumption in building, manufacturing, or retail selling activities.

Whether the rationale of this decision makes it desirable to extend such tax exemption to these other purchases, is a legislative question. Whether it requires the extension of such tax exemption to such other purchases, under the statute as it exists today, is a legal question which need not be decided in this case. It may be observed, however, that the scope of this decision is necessarily narrowed by the fact that it is based upon statutory language which deals specifically with building construction.

Appellant calls attention to rule No. 170, of the 1949 revision of the tax commission rules, promulgated pursuant to RCW 82.32.300. Under this rule, respondents would be liable for the tax here in question.

The rules and interpretations of an administrative agency to which rule-making authority has been delegated are entitled to considerable weight in determining legislative intent. *Fisher Flouring Mills Co. v. State*, 35 Wn. (2d) 482, 213 P. (2d) 938.

The persuasive force of Rule No. 170 is impaired, however, by the fact that the 1949 revision of the tax commission rules contains another rule which, in principle, is diametrically opposed to rule No. 170 and appellant's present position. The rule referred to is No. 165, which exempts laundries and dry cleaners from payment of a retail sales tax on purchases of soap, cleaning solvents, dyes, chemicals, and other articles "which are directly consumed in rendering a laundry or cleaning service." We were told at the argument that the tax commission now regards rule No. 165 as improvidently prescribed, and that it will shortly be rescinded.

Whatever weight is to be attached to rule No. 170, however, we regard the action outlined above, taken by the 1943 legislature after issuance of the decision in the *Klickitat* case, as a more reliable guide to legislative intent. As before indicated, such 1943 legislative action evidenced an intent to accept and confirm the construction placed upon the statute in the *Klickitat* decision.

Affirmed.

DONWORTH, FINLEY, and OTT, JJ., concur.

SCHWELLENBACH, J., concurs in the result.