[No. 41289.   En Banc.   August 31, 1972.]

BUDGET RENT-A-CAR OF WASHINGTON-OREGON, INC., *Respondent*, v. THE DEPARTMENT OF REVENUE, *Appellant.*

172

*Slade Gorton, Attorney General, Henry W. Wager* and *Timothy R. Malone, Assistants,* for appellant.

*Lycette, Diamond & Sylvester* and *Simon Wampold,* for respondent.

HALE, J.—Budget Rent-A-Car is in the business of renting automobiles. In the course of business, it rents late-model automobiles which it keeps in operation for about 9 months, or until they have been run for about 10,000 miles. Then, with a few exceptions, it sells them back to the dealer from which it purchased them. The state sought to impose a business and occupation tax upon the gross proceeds of such sales. From a judgment of the superior court declaring the proceeds of these sales not taxable under the business and occupation tax statutes, the Washington State Department of Revenue appeals. We hold the transactions taxable.

The record here shows a systematic and regular marketing of all automobiles used as rentals. Between the years 1962 and 1966, Budget realized a gross revenue of $899,199 from selling back to the dealers 458 9-month-old automobiles having an average mileage of 10,000 to 12,000 miles at an average price of $399.81 less than Budget had paid for them. It was a routine and continuous business operation and in our judgment represents more than the casual sales of capital assets, into which category Budget would put them. The business and occupation tax imposed on the gross revenue from these sales comes to $4,610.38.

Budget Rent-A-Car is but one of many car rental operations doing business in this state which operate on much the same buy-back agreements with the automobile dealerships from which they buy their automobiles. Every busi-

ness in this state must pay a business and occupation tax on its gross revenue. RCW 82.04.220. *Business,* as the statute defines it for tax purposes, is a broad and virtually all-encompassing commercial activity. It "includes all activities engaged in with the object of *gain, benefit, or advantage* to the taxpayer or to another person or class, directly or indirectly." (Italics ours.) RCW 82.04.140. It thus includes the business of selling and renting. *Sale* is defined as follows:

"Sale" means any transfer of the ownership of, title to, or possession of property for a valuable consideration and includes any activity classified as a "sale at retail" or "retail sale" under RCW 82.04.050. It includes renting or leasing, conditional sale contracts, leases with option to purchase, and any contract under which possession of the property is given to the purchaser but title is retained by the vendor as security for the payment of the purchase price. It also includes the furnishing of food, drink, or meals for compensation whether consumed upon the premises or not.

"Casual or isolated sale" means a sale made by a person who is not engaged in the *business of selling the type of property involved.*

(Italics ours.) RCW 82.04.040. We would be hard put to come up with a broader or more sweeping definition.

The business and occupation tax is not a tax on either profit or net gain or capital gain or sales, but a tax on the total money or money's worth received in the course of doing business. *Young Men's Christian Ass'n v. State,* 62 Wn.2d 504, 383 P.2d 497 (1963). Whether a profit is realized on the transactions is immaterial, for the tax is on the gross revenues received in the course of doing business. RCW 82.04.220. Thus, taxpayer's claim, that it realized no profit in selling the cars for less than it paid for them, is without relevance for the statute imposes the tax regardless of whether the business is losing or making money on the transaction. Further, the term "profit," when related to the sale of these automobiles, is of little significance here for taxpayer has not reckoned the financial value derived from their use as rental automobiles. The extremely broad and

all-encompassing statutory definitions of what constitutes a *business* (RCW 82.04.140) and the equally broad definition of *sale* (RCW 82.04.040) within the statutory business and occupation tax scheme, show that the legislature intended few if any exemptions in either category.

Budget Rent-A-Car contends that these buy-back sales are "casual or isolated" sales, as defined in RCW 82.04.040; and that, under this statute, they amount to a "sale made by a person who is not engaged in the business of selling the type of property involved," and are, therefore, exempt from the tax. It urges WAC 458-20-106 as a basis for over-turning the department's ruling of taxability.[1] That exemption, in our opinion, is not open to this taxpayer for these sales are neither isolated nor casual. In turning over by sale and delivery virtually all of its rental cars, the taxpayer is engaged in the business as defined by statute of selling a particular type of property as an important phase of its business activities.

■ Exemptions to a tax law must be narrowly construed. *Yakima Fruit Growers Ass'n v. Henneford*, 187 Wash. 252, 60 P.2d 62 (1936); *All-State Constr. Co. v. Gordon*, 70 Wn.2d 657, 425 P.2d 16 (1967). Taxation is the rule and exemption is the exception. *Fibreboard Paper Prods. Corp. v. State*, 66 Wn.2d 87, 401 P.2d 623 (1965). Anyone

---

[1]WAC 458-20-106. To the extent material, rule 106 provides:

"Sales are deemed to be *casual* or isolated when made by a person who is not engaged in the business of selling the type of property involved (RCW 82.04.040.) Examples of casual sales are the following:

"1. Sale of a capital asset by a . . . wholesaler or retailer.

". . .

"On the other hand, the sale at retail by a manufacturer or wholesaler of an article of merchandise manufactured or handled by him is not a casual sale, even though he may make but one such sale.

"Furthermore, persons who hold themselves out to the public as making sales at retail or wholesale are deemed to be engaged in the business of selling, and sales made by them of the type of property which they hold themselves out as selling, are not casual sales even though such sales are not made frequently.

"BUSINESS AND OCCUPATION TAX

"*The business and occupation tax does not apply to casual sales made at either retail or wholesale.*" (Italics ours.)

claiming a benefit or deduction from a taxable category has the burden of showing that he qualifies for it. *Group Health Coop. of Puget Sound, Inc. v. State Tax Comm'n,* 72 Wn.2d 422, 433 P.2d 201 (1967).

■ Exemptions thus do no more than carve out of the general law imposing the tax a narrow niche where the tax law does not reach. That the statute imposing the tax is very broad and the exemptions correspondingly narrow is, as earlier noted, evidenced by the all-encompassing definition of *business,* RCW 82.04.140, and *sale,* RCW 82.04.040, and the sweeping definition of *gross proceeds,* RCW 82.04.070. When read together, these provisions leave practically no business and commerce free of the business and occupation tax. To fall outside this extremely broad and all-inclusive tax scheme, so far as pertinent here, the taxpayer's transaction must come within that tiny niche reserved for casual and isolated sales, that is, the event must be a sale made by a person "not engaged in the business of selling the type of property involved." RCW 82.04.040.

The 458 sales, amounting to virtually the total stock of taxpayer's merchandise turned over regularly and in the ordinary course of business, although under an agreement made in advance with the buyers, must be regarded as an integral part of the operation of the business and the exact opposite of what is meant by "casual and isolated sale." To hold that the sales of these automobiles, amounting to a turnover and transfer within a 4-year interval of 458 cars at an average sale price of only $399.81 below purchase price, constitute casual and isolated sales, would so distort the exemption provision in our judgment as to render it virtually meaningless. The sell-back operation does not differ substantially from the retailer's familiar inventory clearance of late-model used automobiles to make room for the needed new ones. No matter how the parties to the transaction may describe them, the sales constitute a regular form of merchandising of used automobiles. We are, therefore, unable to conclude that these are sales made by a

person "not engaged in the business of selling the type of property [here] involved." RCW 82.04.040.

■ Budget, on the question of casual sales of capital assets, refers to WAC 458-20-106, a Department of Revenue regulation, which says that sales of capital assets by a "wholesaler or retailer" are *examples* of casual sales. But the term "capital asset" as used there, in our opinion, means something that is held *only* for use—a device or article kept, maintained, employed and utilized in the conduct and operation of the business, and one not *regularly* sold or held out for sale in a business activity from which the taxpayer derives a substantial part of its revenue. The statute here does not exempt sales of *capital assets* but only *casual sales,* for it is quite conceivable that under some circumstances the sale of capital assets might well be considered a part of the goods, wares and merchandise held out for sale. The regulation, in referring to sales of capital assets simply as *examples* of exempt casual sales, thus does not rule out such a possibility. But even if the department had intended by regulation to exempt *all* sales of capital assets, giving the label *capital asset* to the articles sold does not change the nature of the transaction for purposes of taxation. Whatever label may be applied to the automobiles, their sale falls within the taxation provision and not the exemption provision, for the department is without authority to amend the statute by regulation. It cannot properly carve out an exemption for regular noncasual sales when the statute makes no such exemption. Accordingly, under RCW 82.04.140, the regular sale of all rental automobiles constituting as they do an integral part of the taxpayer's business, "with the object of . . . advantage to the taxpayer," by statutory definition, puts the taxpayer in the "business" of selling the items, and, therefore, within the terms of the statute levying the tax.

Under current revenue laws, then, we think that Budget's operation involved at least two distinct taxable aspects: the rental of automobiles at retail to the public, and the sale of late-model used cars at wholesale. Each aspect of

the business is a taxable operation under the business and occupation tax.

The trial court is reversed and the order of the Department of Revenue is reinstated.

HAMILTON, C.J., FINLEY, ROSELLINI, and HUNTER, JJ., and SHORETT, J. Pro Tem., concur.

STAFFORD, J. (dissenting)—Budget Rent-A-Car, as its name implies, is in the business of renting automobiles. A business and occupation tax was imposed on the gross proceeds generated therefrom. That tax has not been challenged.

The operation of a car rental business requires a continuing supply of late model automobiles. As a result, between January 1, 1962 and June 30, 1966, Budget purchased new automobiles and continually replaced them at the end of their useful rental life (*i.e.,* either at the end of 9 months or 10,000 miles of service). The cycle of replacing "overaged" vehicles with new automobiles was maintained solely for the purpose of supplying the rental trade with new cars.

Although a few of the "overage" automobiles were sold at random to unsolicited casual customers, the bulk were disposed of by means of "buy-back" agreements with manufacturers and local dealers. Under such a plan, Budget would purchase new automobiles at fleet prices and thereafter would return them to the dealers and manufacturers at the end of the cars' useful rental life. At the time of the exchange, Budget would receive credit for the "trade-in" value on the fleet price of new automobiles. Budget's sale, replacement or trade-in of "overage" cars was not carried on for gain or profit. In fact, it was operated at a loss. While the business and occupation tax is not a tax on profit or net gain, the fact of gain or loss from the questioned operation may be properly considered in the overall picture of determining whether Budget was in the business of selling used automobiles or whether it was in fact only selling capital assets.

The Washington State Department of Revenue conducted

an audit of Budget's business and assessed an additional business and occupation tax based on gross proceeds of sale[2] claimed to have been derived from Budget's recycling of "overage" cars. Budget paid the tax and interest under protest and appealed from an adverse order of the Tax Commission. RCW 82.32.180.

On appeal, the superior court entered judgment overruling the Tax Commission's order. The Department of Revenue appealed.

The Department of Revenue has assigned error only to part of the trial court's finding of fact No. 3. However, it is important to note that the department's brief has presented no argument challenging that portion thereof which finds that the automobiles constituted a *capital asset*. The majority has chosen to ignore this vital fact. We must assume the Department of Revenue has abandoned the assignment of error, at least to that extent. *Cummings v. Nordmark*, 73 Wn.2d 322, 438 P.2d 605 (1968); *Sepich v. Department of Labor & Indus.*, 75 Wn.2d 312, 450 P.2d 940 (1969). Furthermore, the department has made no contention that Budget's disposition of "overage" cars was other than the *sale of a capital asset*, another fact overlooked by the majority.

Thus, the true narrow issue is whether gross proceeds derived from the sale, replacement or trade-in of these particular *capital assets* is exempt from the business and occupation tax.

A determination of the issue requires one to review RCW 82.04.040, the Tax Commission's rule applicable thereto, and the *Tax Commission's* interpretation *of its own rule.*

---

[2]The tax imposed upon either retailing or wholesaling is measured by "gross proceeds of sales" defined by RCW 82.04.070 as:

" 'Gross proceeds of sales' means the value proceeding or accruing from the sale of tangible personal property and/or for services rendered, without any deduction on account of the cost of property sold, the cost of materials used, labor costs, interest, discount paid, delivery costs, taxes, or any other expense whatsoever paid or accrued and without any deduction on account of losses."

RCW 82.32.300 grants rule-making power to the Tax Commission:

> The tax commission shall make and publish rules and regulations, not inconsistent therewith, necessary to enforce their provisions, which shall have the same force and effect as if specifically included therein, unless declared invalid by the judgment of a court of record not appealed from.

Rules and regulations thus adopted are entitled to considerable weight in determining legislative intent unless they are inconsistent with the basic statute or inconsistent with each other. *Earley v. State,* 48 Wn.2d 667, 296 P.2d 530 (1956); *Pierce County v. State,* 66 Wn.2d 728, 404 P.2d 1002 (1965).

RCW 82.04.040 defines "sale" and "casual or isolated sale" as follows:

> "Sale" means any transfer of the ownership of, title to, or possession of property for a valuable consideration and includes any activity classified as a "sale at retail" or "retail sale" under RCW 82.04.050. It includes renting or leasing, conditional sale contracts, leases with option to purchase, and any contract under which possession of the property is given to the purchaser but title is retained by the vendor as security for the payment of the purchase price. It also includes the furnishing of food, drink, or meals for compensation whether consumed upon the premises or not.
>
> "Casual or isolated sale" means a sale made by a person who is not engaged in the *business of selling the type of property involved.*

(Italics mine.)

The Tax Commission clarified RCW 82.04.040 by WAC 458-20-106 (also known as rule 106). The rule, issued long prior to the genesis of the instant dispute, provides that the business and occupation tax does *not* apply to "casual sales" made at either retail or wholesale. It also provides the sale of a *capital asset* by a wholesaler or retailer is an example of a "casual sale".[3] Neither party has questioned

---

[3] WAC 458-20-106. To the extent material, rule 106 provides:
"Sales are deemed to be *casual* or isolated when made by a person

the rule. Thus, one should assume, for the purpose of this case, that it properly defines "casual sales" made at either retail or wholesale, except for the majority's sua sponte treatment to the contrary.

Although rule 106 provides:

persons who hold themselves out to the public as making sales at retail or wholesale are deemed to be engaged in the business of selling, and sales made by them *of the type of property which they hold themselves out as selling*, are not casual sales even though such sales are not made frequently . . .

(italics mine) the record indicates Budget did not hold itself out to the public as making sales of automobiles at retail or wholesale. The gist of finding of fact No. 4 is that Budget carried on no advertising or other sales promotion and it employed no car salesmen for the disposal of its "overaged" cars. The great bulk were disposed of by means of the buy-back agreements; however, a small number were sold at random to an occasional unsolicited casual customer. The Department of Revenue has assigned no error to that finding of fact. Thus, we should assume that it is correct. ROA I-43; *Pagliaro v. Maples*, 75 Wn.2d 580, 452 P.2d 727 (1969); *Riley v. Rhay*, 76 Wn.2d 32, 454 P.2d 820 (1969). Nevertheless, the majority has brushed over this finding of fact as well.

The Tax Commission further interpreted rule 106 and

---

who is not engaged in the business of selling the type of property involved (RCW 82.04.040). Examples of casual sales are the following:

"1. Sale of a *capital asset* by a . . . wholesaler or retailer.

". . .

"On the other hand, the sale at retail by a manufacturer or wholesaler of an article of merchandise manufactured or handled by him is not a casual sale, even though he may make but one such sale.

"Furthermore, persons who hold themselves out to the public as making sales at retail or wholesale are deemed to be engaged in the business of selling, and sales made by them of the type of property which they hold themselves out as selling, are not casual sales even though such sales are not made frequently.

"BUSINESS AND OCCUPATION TAX

"*The business and occupation tax does not apply to casual sales made at either retail or wholesale.*" (Italics mine.)

RCW 82.04.040 in a letter dated September 16, 1966. It indicated therein that property was not deemed to be held primarily for sale and the business and occupation tax was not considered applicable to trade-ins when, as here, the taxpayer was not otherwise engaged in making wholesale sales of automobiles, and all vehicles were traded in solely for the purpose of replacing them with new property for rental purposes. In arriving at that conclusion, the letter observed:

> The Commission noted that the Internal Revenue Service, under similar circumstances had adopted a rule that one who disposes of property only for the purpose of replacing it with new property for the same purpose when its productive life had expired, was not holding the property "primarily for sale" and was disposing of the property as an incident to the leasing business and, accordingly, was not engaged in the business of selling as a dealer.

The letter stated further:[4]

> However, from the standpoint of consistency and equity I feel that the 1963 ruling is correct. All businesses such as manufacturers and contractors regularly trade-in tools and equipment when purchasing new equipment for use in the conduct of the business and we have not asserted a Wholesaling Tax on these trade-ins.

Rule 106, the Tax Commission's interpretation thereof and its stated practice thereunder, indicate that whether such disposal of "overage" cars by replacement, trade-in or sale is exempt from the operation of the business and occupation tax as "casual sales" is not necessarily gauged by the mere volume thereof. The determining factor is the nature and type of exchange by replacement, by trade-in or by sale, and the manner in which it relates to the *business* of the wholesaler or retailer. Both RCW 82.04.040 and rule 106 provide that a sale is classified as "casual" if made by one who is *not engaged in the business* of selling the type of

---

[4]"The rules and *interpretations* of an administrative agency to which rule-making authority has been delegated are entitled to considerable weight in determining legislative intent." (Italics mine.) *Earley v. State*, 48 Wn.2d 667, 673, 296 P.2d 530 (1956).

property involved. The commission's interpretive letter indicates that Budget was not deemed to have been engaged in the business of selling the type of property involved.

Granted, the department might have been entitled to a more favorable result had its assignments of error and brief presented the dispute in a different posture. This, however, does not give us license to "back-fill" or ignore holes in the department's case merely because we dislike the result.

The Tax Commission's rule and its own interpretation thereof support the ruling of the trial court. Thus, we should properly conclude:

1. Sales are deemed "casual" when made by one who is not engaged in the business of selling the type of property involved.

2. Budget was not engaged in the selling of the type of property involved.

3. Budget's automobiles constituted a capital asset.

4. The disposal of "overage" automobiles by sale, replacement or trade-in, solely for the purpose of supplying new rental automobiles for the rental trade, is the sale of a capital asset.

5. Thus, Budget's disposal of "overage" automobiles in that manner and for that purpose was the sale of a capital asset.

6. The sale of a capital asset by a wholesaler or retailer is a "casual sale" unless the seller holds himself out to the public as selling the type of property involved.

7. Budget did not hold itself out to the public as selling automobiles. Thus, the sale of its capital assets was a "casual sale".

8. The business and occupation tax does not apply to "casual sales" made at either retail or wholesale.

9. The business and occupation tax does not apply to Budget's disposal of "overage" automobiles by sale, replacement or trade-in because it is, by commission rule and the commission's interpretation of the rule, a "casual sale".

The trial court should be affirmed.

NEILL and UTTER, JJ., concur with STAFFORD, J.

Petition for rehearing denied October 30, 1972.