[No. 1848-2. Division Two. August 12, 1976.]

WEYERHAEUSER COMPANY, *Respondent*, v. THE DEPARTMENT OF REVENUE, *Appellant*.

*Slade Gorton, Attorney General,* and *Richard D. Hicks, Assistant,* for appellant.

*Helmut Wallenfels,* for respondent.

PEARSON, J.—This is an action for a refund of use taxes (RCW 82.12.020) assessed and paid for the period January 1, 1964, through December 31, 1967. Defendant, the Department of Revenue, appeals from a judgment of the Cowlitz County Superior Court reversing the decision of the Board of Tax Appeals upholding defendant's assessment of the use tax on plaintiff Weyerhaeuser Company's use of calcium chloride in its manufacture of corrugating medium. The sole question on appeal is whether plaintiff is exempt from the imposition of this tax. For the reasons stated below, we find that it is.

The facts as found by the Board of Tax Appeals and adopted by the Superior Court are not in dispute. The plaintiff manufactures corrugating medium, a paper product which is the center portion of the cardboard used in making cardboard boxes. The process of making the medium requires that wood chips first be reduced to wood fiber by chemical cooking. The fibers are next separated from nonfiber ingredients and then transported to the paper machine in a slurry consisting of 99.5 percent water and 0.5 percent wood fiber. Calcium chloride, which plaintiff purchases from an out-of-state supplier, is added to the slurry and the

slurry then enters the paper machine, where the fiber and water are separated by draining away the water. It is the addition of the calcium chloride and its effect on this draining process with which this case is concerned.

Each wood fiber particle in the slurry consists of two layers: a dense inner layer and a diffuse outer layer formed of various kinds of ions. Because of its diffuseness, the outer layer inhibits water drainage by blocking the spaces between individual fibers. When calcium chloride is added to the slurry, it forms a permanent electrokinetic bond—a physical rather than a chemical reaction—with the ions in the outer layer of the fiber, causing the layer to contract, which in turn increases the space between individual fibers and permits water to drain more rapidly from the fibers. Plaintiff admits it would not use the calcium chloride in this process were it not for the consequent change in the character of the wood fiber and the resultant increase in the speed at which the water and fiber can be separated and at which its paper machine can process the slurry.

Approximately 47 percent of the calcium chloride added to each batch of slurry remains permanently bonded to the wood fiber and becomes an ingredient of the corrugating medium. The rest is carried away with the drained water and is recycled with future batches of slurry.

■ Before reaching the merits of this appeal, we must first resolve the parties' dispute over the appropriate standard of review of the Board of Tax Appeals' ruling. Defendant contends our review is limited to the question of whether the board's decision is "clearly erroneous." RCW 34.04.130(6)(e). There is, however, no dispute as to the facts found by the board and adopted by the Superior Court. Our function, therefore, is to ascertain the legal effect of uncontroverted facts, which involves a question of law. *Leschi Improvement Council v. State Highway Comm'n*, 84 Wn.2d 271, 525 P.2d 774 (1974); *Property Holding & Dev., Inc. v. Employment Security*, 15 Wn. App. 326, 549 P.2d 58 (1976); *Inland Empire Dairy Ass'n v. Department of Revenue*, 14 Wn. App. 592, 544 P.2d 52 (1975). The "clearly

erroneous" test is inappropriate for review of questions of law. *Leschi Improvement Council v. State Highway Comm'n, supra*; *Inland Empire Dairy Ass'n v. Department of Revenue, supra*. Rather we must exercise our inherent and statutory authority to make a de novo review independent of the board's decision. *Leschi Improvement Council v. State Highway Comm'n, supra*; *Inland Empire Dairy Ass'n v. Department of Revenue, supra*; RCW 34.04.130(6)(d).

RCW 82.12.020 imposes a use tax upon "[E]very person . . . for the privilege of using within this state as a consumer any article of tangible personal property purchased at retail, . . ." Defendant contends that to qualify for an exemption under this statute plaintiff must show *both* that its purchase of calcium chloride was not "at retail" *and* that it was not a "consumer" of the calcium chloride. We disagree. The "consumer" and "retail" requirements of RCW 82.12.020 are separate, and each must be satisfied before the use tax may be properly imposed. *See Earley v. State*, 48 Wn.2d 667, 296 P.2d 530 (1956). It follows, therefore, that if plaintiff's purchase of calcium chloride was not "at retail" within the meaning of RCW 82.04.050, or if it did not use it "as a consumer," RCW 82.04.190,[1] the tax was erroneously assessed and plaintiff is entitled to a refund.

Plaintiff's argument that its purchase of the calcium chloride was not "at retail" within the meaning of RCW 82.12.020 is premised upon the first paragraph of RCW 82.04.050 which, insofar as here applicable, states:

"Sale at retail" or "retail sale" means every sale of tangible personal property . . . other than a sale to a person who . . . (c) purchases for the purpose of consuming the property purchased in producing for sale a new article of tangible personal property or substance, of which such property becomes an ingredient or component or is a chemical used in processing, when the primary purpose of such chemical is to create a chemical

[1]The definitions contained in RCW 82.04.050 and RCW 82.04.190 are applicable to terms in RCW 82.12. *See* RCW 82.12.010(5).

reaction directly through contact with an ingredient of a new article being produced for sale.

It will be noticed that subsection (c) contains two exceptions from the definition of a retail sale. The first is property which (1) is purchased to be consumed in the production of a new article or substance and (2) becomes a component or ingredient of a new article or substance. The second exclusion relates to chemicals used in processing a new article. It is the first, or ingredient exception, under which plaintiff claims its exemption from the use tax.

Defendant's legal arguments on this point are rather complicated. It first contends plaintiff made an intervening use of the calcium chloride which brings it within the retail sale definition. This argument is based on the first sentence following RCW 82.04.050 (c):

The term ["sale at retail" or "retail sale"] shall include every sale of tangible personal property which is used or consumed . . . in the performance of any activity classified as a "sale at retail" or "retail sale" even though such property is resold or utilized as provided in . . . (c) above following such use.

Alternatively, defendant argues plaintiff's use of the calcium chloride fails to meet the ingredient requirement of RCW 82.04.050 (c) since plaintiff's primary purpose for purchasing the property was not to make it an ingredient of the corrugating medium, but was to increase the drainage efficiency of plaintiff's paper machine. This argument is based upon rule 113 (WAC 458-20-113),[2] promulgated by

---

[2]The portion of rule 113 defendant relied upon states:

"ARTICLES PURCHASED FOR DUAL PURPOSES. Where an article purchased serves a dual purpose, tax liability under the retail sales tax is determined by the primary purpose for which the article is purchased. The fact that a portion of the article purchased actually becomes a physical part of the new article produced for sale is not in itself sufficient to constitute the sale thereof a sale at wholesale, unless such use is the primary purpose for which the article was purchased. Thus, the sale of coal to a cement manufacturer which is used primarily as a fuel for producing heat is a taxable retail sale even though the ash from the burned coal is blown into the cement mixture and actually remains an ingredient thereof. Likewise the sale of coke to a foundry to produce heat for melting iron or steel is a taxable retail sale,

the Department of Revenue, which construes RCW 82.04.050(c) to impose a tax on articles purchased for a dual purpose, when the "primary purpose" of purchasing such articles is for something other than becoming a part of the new article being produced for sale. Accordingly, defendant argues, plaintiff's purchase was "at retail" and was properly subject to the use tax.[3]

Defendant agrees calcium chloride is consumed in plaintiff's production of corrugating medium. However, it makes two detailed arguments challenging plaintiff's contention that the calcium chloride sufficiently meets the ingredient requirement of the statute. Factually defendant's arguments are indistinguishable. Its basic analysis, as we understand it, is that calcium chloride would not be used in plaintiff's manufacturing process if it did not enable it to increase the speed at which it runs its paper machine. Therefore, the use of calcium chloride which results in this increase constitutes (1) an intervening use and (2) the primary purpose for purchasing the chemical, and it is not exempt from the use tax.

█ It is true that portions of machinery or fuel used in

---

although a secondary purpose in using coke is to introduce carbon into the metal."

[3]Defendant fears a finding that plaintiff's use of the calcium chloride is within the ingredient exception of RCW 82.04.050(c) will nullify rule 113. It directs our attention to the general rule that courts will accord great weight to the interpretation given a statute by an agency charged with its administration, especially where the statute is ambiguous and the agency interpretation has been silently acquiesced in by the legislature over a period of years. *Morin v. Johnson,* 49 Wn.2d 275, 300 P.2d 569 (1956); *Buffelen Lumber & Mfg. Co. v. State,* 32 Wn.2d 40, 200 P.2d 509 (1948). Defendant informs us that the section of rule 113 quoted in footnote 2, has been in effect and has been consistently interpreted since 1939.

We note that in 1939, when rule 113 became effective, what is now RCW 82.04.050(c) contained no "primary purpose" language as does rule 113. *See* Laws of 1939, ch. 225, § 2. Further, when the legislature amended the statute in 1943 to include a "primary purpose" requirement, it was only with reference to the chemical exception. *See* Laws of 1943, ch. 156, § 2. Thus we are not convinced that rule 113, if interpreted in the manner now urged, has been "silently acquiesced in" by the legislature.

the manufacturing process which incidentally become part of the product manufactured may not be exempt from the sale or use tax. *See Pacific Northwest Alloys, Inc. v. State,* 49 Wn.2d 702, 306 P.2d 197 (1957) and cases cited therein. Here we have the opposite situation. Calcium chloride is not part of the machine or fuel used to produce corrugating medium. Here calcium chloride is added to the material which becomes corrugating medium. Its addition changes the character of the material to which it is added and incidentally affects the machinery used in producing the final product.

The weakness in defendant's argument inheres in the terms "intervening use" and "primary purpose," both of which imply utilization of an article in multiple and distinct ways.[4] But calcium chloride is used only once in plaintiff's process. It is added as an ingredient of the material from which corrugating medium is manufactured to change the character of the fiber in the slurry. It is the change in character which makes the use of calcium chloride beneficial to plaintiff's process. The purpose for its use can be accomplished only by making it an ingredient of the slurry, and it is *used* once for the single purpose of becoming an ingredient.

For these reasons we conclude that plaintiff's purchase of calcium chloride is not "at retail" within the meaning of RCW 82.04.050(c), and therefore its use is not subject to

---

[4] *Cf.* RCW 82.12.010(2) which states in part:

" 'Use,' 'used,' 'using,' or 'put to use' shall have their ordinary meaning, and shall mean the *first act* within this state . . ." (Italics ours.) Note also, the portion of RCW 82.04.050 upon which defendant relies, appears to apply to distinct and separate uses of an article.

The implication, with respect to defendant's "primary purpose" argument, footnote 2, is made clearer by the terms of rule 113 itself, which do not support a finding here of more than one purpose for the use of calcium chloride. The examples in the rule which explain the department's interpretation apply in cases where an article's primary purpose is to enhance or facilitate the means by which a product is made. In the course of fulfilling this purpose, a by-product is produced which is incidentally or secondarily introduced into the new article. *Compare Pacific Northwest Alloys, Inc. v. State,* 49 Wn.2d 702, 306 P.2d 197 (1957).

the tax imposed by RCW 82.12.020. Because of our resolution of this issue, it is unnecessary to decide whether the plaintiff used the calcium chloride "as a consumer" within the meaning of RCW 82.12.020. The use tax was improperly assessed and plaintiff is entitled to a refund.

Judgment affirmed.

PETRIE, C.J., and REED, J., concur.