IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| YOUNG'S MARKET COMPANY OF WASHINGTON, LLC,<br><br>Appellant,<br><br>v.<br><br>STATE OF WASHINGTON, DEPARTMENT OF REVENUE,<br><br>Respondent. | No. 87614-7-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

SMITH, J. — Young's Market Company, a wholesale distributor, received over $21 million in termination payments from a competitor when a supplier terminated its contract without cause. The Department of Revenue[1] assessed $315,227.11 in business and occupation (B&O) taxes. Young's appealed and the Washington State Board of Tax Appeals upheld the Department's assessment on summary judgment. Young's sought judicial review in superior court and the matter was certified to this court for direct review. Young's claims the termination payments are not subject to B&O tax and, if they are, they should be taxed under the "tax on wholesalers" designation. We affirm the Board's determination that the payments are subject to B&O tax and were properly classified under "service and other activities."

---

[1] The Department of Revenue is Washington State's primary licensing and tax collection agency. The Department oversees and administers a variety of Washington's taxes, including the business and occupation tax.

FACTS

Young's is a wholesale distributor of alcoholic beverages. As a wholesale distributor, Young's competes with other distributors for the exclusive right to distribute particular brands of alcoholic beverages to suppliers. The business of wholesale distribution is regulated by the Wholesale Distributor/Supplier Equity Agreement Act, ch. 19.126 RCW (Franchise Act[2]). The Franchise Act provides certain protections to wholesale distributors, including the right to receive monetary compensation from a successor distributor when a supplier terminates a wholesale distributor's distribution rights without cause. RCW 19.126.040. These protections are deemed to be incorporated into every agreement of distributorship. RCW 19.126.040.

In the wholesale distribution industry, suppliers commonly terminate distribution agreements without cause in favor of a successor distributor. When a supplier terminates an agreement without cause, the successor distributor must compensate the terminated distributor for the fair market value of the terminated distribution rights. RCW 19.126.040(5). "Fair market value" may be fixed by agreement of the parties or by arbitration. RCW 19.126.040(4). In any given year, Young's may gain or lose several suppliers.

In 2013, Young's entered into a brand transfer agreement with Southern Wine & Spirits of Washington, LLC, a competitor in the wholesale distribution business. A brand transfer agreement is created in anticipation of the

---

[2] We use the same short-hand description for this statute as in the Board of Tax Appeals's decision and the brand transfer agreement.

termination of distribution rights and sets forth procedures for the transfer of said rights from one distributor to another, including the method for calculating "fair market value." The recitals in the brand transfer agreement between Young's and Southern included, in part, the following:

> [T]he parties anticipate that, from time to time, certain Suppliers may change the appointment of the distributor of one or more Products in the Territory and the Parties believe it is in their mutual best interests to agree in writing to the procedures each Party will follow to effectuate an orderly and efficient change in the appointment of the distributor of the Products in accordance with the Franchise Act.
>
> . . .
>
> The purpose of this Agreement is to ensure a smooth and orderly transition of the Products from the Prior Distributor to the New Distributor, to avoid disputes over the application of the Franchise Law, and to compensate the Prior Distributor for the loss of the distribution rights to the Products in the Territory in compliance with the Franchise Act.

The agreement also set the fair market value of terminated distribution rights.

Between 2013 and 2016, suppliers for four brands—Bacardi, Ole Smoky, Disaronno, and Stoli—terminated Young's distribution rights without cause and appointed Southern as the successor distributor. In accordance with the brand transfer agreement and the Franchise Act, Southern compensated Young's when it acquired the distribution rights to each of these brands.[3]

In 2018, the Department of Revenue audited Young's state excise tax returns for the period of January 1, 2014, to December 31, 2016. The Department found that Young's failed to report B&O tax on all payments it

---

[3] Southern paid Young's $2,214,182.95 for Stoli; $364,280.00 for Ole Smoky; $547,854.00 for Disaronno; and $17,272,421.00 for Bacardi.

received from Southern for its terminated distribution rights. The Department determined compensation payments for terminated distribution rights were gross income of Young's business and subject to B&O tax. Accordingly, the Department issued an assessment for $315,227.11 in B&O taxes under the "services and other activities" classification.

Young's moved for administrative review with the Department's Administrative Review and Hearings Division (ARHD). The ARHD upheld the Department's assessment and denied reconsideration. Young's appealed to the Board of Tax Appeals. Both Young's and the Department moved for summary judgment. In its motion, Young's contended the compensation payments were not subject to B&O tax because they were received by operation of law and not considered "gross profits." The Board issued an initial decision granting the Department's motion for summary judgment and denying Young's motion. In its decision, the Board concluded that Young's "entered into Brand Transfer Agreements voluntarily, and for its own gain, benefit, or advantage," and this was a "business activity" under RCW 82.04.140. Accordingly, the payments, which the Board deemed "settlement payments for lost business income, not gross proceeds of sales," were subject to B&O tax. The Board also concluded that, even if the transactions were sales—as Young's contended—the sales were not "casual or isolated sales" and not exempt from B&O tax.

Young's filed an exception to the initial decision. Young's reasserted its original argument and claimed, in the alternative, if the compensation was subject to B&O tax, it should be reclassified under the "tax on wholesalers"

classification.  The Board denied Young's request for review and adopted the initial decision as its final decision.  Young's sought judicial review of the Board's decision in King County Superior Court.  The court certified the case for direct review by this court under RCW 34.05.518(1)(b).

ANALYSIS

Young's claims the Board erred when it granted the Department's motion for summary judgment and held the statutorily mandated amount Young's received pursuant to RCW 19.126.040(4) was subject to B&O tax, because loss of distribution rights is not business activity.  Alternatively, Young's contends if the payments are subject to B&O tax, they should be considered an isolated sale exempt from the tax or as a tax on wholesalers.  The Department maintains the Board did not err and the payments Young's received were by reason of its business activities and, therefore, were gross income of the business subject to B&O tax.  Additionally, the Department contends the Board properly determined the payments were subject to the tax rate under the "service and other activities" classification.

Under the Administrative Procedure Act, ch. 34.05 RCW, we review a decision of the Board of Tax Appeals de novo.  RCW 82.03.180.  An agency order may be reversed if " '[t]he agency has erroneously interpreted or applied the law.' "  *Steven Klein, Inc. v Dep't of Revenue*, 183 Wn.2d 889, 895, 357 P.3d 59 (2015) (alteration in original) (quoting RCW 34.05.570(3)(d)).  Questions of statutory interpretation are questions of law that we also review de novo.

5

*Olympic Tug & Barge, Inc. v. Dep't of Revenue*, 163 Wn. App. 298, 306, 259 P.3d 338 (2011).

Our primary objective when interpreting a statute is to " 'ascertain and carry out the intent of the legislature.' " *HomeStreet, Inc. v. Dep't of Revenue*, 166 Wn.2d 444, 451, 210 P.3d 297 (2009) (quoting *Rozner v. City of Bellevue*, 116 Wn.2d 342, 347, 804 P.2d 24 (1991)). First, we look to the plain meaning of the statute. *HomeStreet*, 166 Wn.2d at 451. "Plain meaning 'is to be discerned from the ordinary meaning of the language at issue, the context of the statute in which that provision is found, related provisions, and the statutory scheme as a whole.' " *Lake v. Woodcreek Homeowners Ass'n*, 169 Wn.2d 516, 526, 243 P.3d 1283 (2010) (quoting *State v. Engel*, 166 Wn.2d 572, 578, 210 P.3d 1007 (2009)). While we may look at the broader statutory scheme to discern the language of the statute, "we 'must not add words where the legislature has chosen not to include them.' " *Lake*, 169 Wn.2d at 526 (quoting *Rest. Dev., Inc. v. Canawill, Inc.*, 150 Wn.2d 674, 682, 80 P.3d 598 (2003)).

In Washington State, a B&O tax is levied and collected on every person for "the act or privilege of engaging in business activities." RCW 82.04.220(1). "Engaging in business" is defined as "commencing, conducting, or continuing in business." RCW 82.04.150. " 'Business' includes all activities engaged in with the object of gain, benefit, or advantage to the taxpayer or to another person or class, directly or indirectly." RCW 82.04.140. Engaging in business may include involuntary activity, such as when "the taxpayer does not personally undertake the transaction from which they realize a gain." *Quinn v. State*, 1 Wn.3d 453,

6

478-81, 526 P.3d 1 (2023) (holding the tax on capital gains was an excise tax, not a property tax, because " '[v]oluntariness' in this context is best understood as pertaining to some action that results in a sale or transfer of property as the taxable event, whether or not reflecting the individual will of the taxpayer").

B&O tax is "measured by the application of rates against value of products, gross proceeds of sales, or gross income of the business, as the case may be." RCW 82.04.220(1). " 'Gross income of the business' means the value proceeding or accruing by reason of the transaction of the business engaged in." RCW 82.04.080(1). This includes the gross proceeds of sales and compensation for services rendered. RCW 82.04.080(1). " 'Value proceeding or accruing' means the consideration, whether money, credits, rights, or other property expressed in terms of money, actually received or accrued." RCW 82.04.090. B&O tax is not a tax on profit, net gain, or sales, "but a tax on the total money or money's worth received in the course of doing business." *Budget Rent-A-Car of Wash.-Or. v. Dep't of Revenue*, 81 Wn.2d 171, 173, 500 P.2d 764 (1972).

B&O tax is applied to different business activities at different rates. *Klein*, 183 Wn.2d at 897. The tax rate for wholesale sales is equal to "the gross proceeds of sales of such business multiplied by the rate of 0.484 percent." RCW 82.04.270. The tax on wholesalers applies to "every person engaging within this state in the business of making sales at wholesale, except persons taxable as wholesalers under other provisions of this chapter." RCW 82.04.270. When a person engages in "any business activity other than or in addition to an activity taxed explicitly under another section in this chapter," the "service and

7

other activities" tax rate applies. RCW 82.04.290. The "service and other activities" tax classification is a catchall category and includes "any type of business activity or service 'which does not constitute a sale at retail or a sale at wholesale.' " *Klein*, 183 Wn.2d at 897 (internal quotation marks omitted) (quoting RCW 82.04.290(2)(a), (b)). The tax rate under the "service and other activities" classification is equal to "the gross income of the business multiplied by the rate of 1.75 percent." RCW 82.04.290(2)(i).

B&O tax is broad, and the legislature " 'intended to impose the business and occupation tax upon virtually all business activities carried on within the state.' " *Klein*, 183 Wn.2d at 896 (quoting *Simpson Inv. Co. v. Dep't of Revenue*, 141 Wn.2d 139, 149, 3 P.3d 741 (2000)). An exemption from taxation must be clearly and explicitly authorized by the legislature. *Belas v. Kiga*, 135 Wn.2d 913, 933, 959 P.2d 1037 (1998) ("[I]t has been the well settled rule in this state for over 70 years that the court will find an exemption from taxation only where the legislature has authorized such by clear and explicit language.").

1. Applicability of B&O Tax

Young's contends the Board erred when it determined the payments received as compensation for the loss of its distribution rights were subject to B&O tax. The Department claims the Board properly concluded the payments were gross income of the business and subject to B&O tax. We agree with the Department.

Whether the compensation received by Young's is subject to B&O tax depends on whether the compensation resulted from Young's being engaged in

8

business activities, as contemplated by ch. 82.04 RCW. Young's maintains it was not engaged in a business activity when it received payments from Southern because losing its distribution rights was not voluntary and entering a settlement agreement to determine the amount of a statutorily mandated payment is not a business activity.

First, as the Supreme Court stated in *Quinn*, activity does not need to be voluntary to be subject to B&O tax. 1 Wn.3d at 480. In *Quinn*, the Court noted excise taxes can be triggered by events not voluntarily undertaken by the taxpayer, such as when a minority shareholder is bound by the decision of the majority shareholder and must pay taxes on the sale of property. 1 Wn.3d at 480. The fact that Young's did not want to have its distribution rights terminated does not mean it was not "engaged in business" for purposes of B&O tax when it transferred the rights and received compensation.

Young's next asserts that entering into a contractual agreement to determine the value of a lost asset is not a business activity that generates taxable gross income and is thereby not subject to B&O tax. As support, Young's notes that it would have received the payments even if it had not entered into the brand transfer agreement with Southern. But it is not the act of entering into the agreement that is considered the business activity, it is the act of transferring distribution rights and receiving compensation.[4] The transfer of

---

[4] While Young's is correct that the Board concluded Young's "entered into Brand Transfer Agreements voluntarily" and identified this as business activity, we do not believe the Board meant to so narrowly construe the business activity as the actual act of entering in the brand agreements versus the process of transferring/receiving distribution rights.

distribution rights is a business activity explicitly contemplated by the Franchise Act and is an inherent part of the wholesale business.[5]  *See* RCW 19.126.040. Therefore, when Young's transferred its distribution rights and received compensation, it engaged in a business transaction, and proceeds from that transaction are considered gross income of the business.

Young's identifies no provisions in the Franchise Act that would exempt payments received as compensation for the termination of distribution rights. *See, e.g.*, *TracFone Wireless, Inc. v. Dep't of Revenue*, 170 Wn.2d 273, 296-97, 242 P.3d 810 (2010) (" '[T]axation is the rule and exemption is the exception, and where there is an exception, the intention to make one should be expressed in unambiguous terms.' " (quoting *Columbia Irrig. Dist. v. Benton County*, 149 Wash. 234, 240, 270 P. 813 (1928))).  Accordingly, amounts received under RCW 19.126.040 are gross income received by reason of engaging in business activity and subject to B&O tax.

Next, Young's claims that even if entering into an agreement is a business activity, it is not subject to B&O tax.  Young's maintains that, according to the Department's own guidance, "legally required settlement payments received for damage to an asset . . . is not a B&O taxable business activity."  As concluded above, the business activity Young's engaged in is not merely entering into the settlement agreement.  But even if the act of entering into a settlement

---

[5]  The brand transfer agreement notes, "Parties anticipate that, from time to time, certain Suppliers may change the appointment of the distributor."  This is a recognized, common activity in the wholesale business.

agreement is considered the business activity, the payments received are still subject to B&O tax.

Young's cites to the Department's "Legal settlements – Are they Taxable?" article to contend legal settlements are not subject to B&O tax. The article states, in pertinent part:

> If you receive payments after engaging in a specific business activity, taxes are based on that activity. Some examples include:
>
> - breach of a retail construction contract where the other party did not pay the prime contractor for their construction services rendered (retailing business and occupation (B&O) tax and retail sales tax)
>
> - breach of an engineering contract where the other party did not pay the engineering firm for their design services rendered (service and other activities B&O tax)
>
> - unauthorized use of intangible property (royalties B&O tax)
>
> . . .
>
> If you receive payments for non-business purposes, such as personal injury or property damage (excluding inventory), you do not owe B&O tax on this income. This may also include certain insurance or other legal settlements. Examples include payments you receive:
>
> - to cover damage to operating assets
>
> - for personal injury
>
> - for eminent domain

First, Young's contends the payments arose from the loss of or damage to property and, therefore, are not subject to B&O tax. But Young's is not receiving money for personal injury or property damage, and the guidance states only "certain . . . legal settlements" are exempt from B&O taxes. Young's does not identify why, if the compensation received is considered a legal settlement, the settlement proceeds are not subject to B&O tax.

11

Next, Young's challenges the Department's claim that the payments Young's received were "payments for engaging in a specific business activity." But, as discussed supra, the payments were received as a result of Young's transferring its distribution rights, which is a specific business activity; therefore, B&O tax applies.

Young's also cites to several Department determinations to support its claim that payments received as part of a settlement agreement are not subject to B&O tax, but those determinations are distinguishable. In Revenue Determination No. 13-0269, a taxpayer received money from a landlord as an incentive to move before the end of their lease term because the landlord intended to use the building for its own purposes. Wash. Dep't of Revenue, Determination No. 13-0269, 33 Wash. Tax Dec. 144, 149 (2014). The taxpayer operated a moving and storage business, and the lease agreement was part of its business operations. *Id*. at 151. The taxpayer alleged the amount received was a pre-litigation negotiated settlement of a breach of lease contract claim, not gross income of the business. *Id*. The Board agreed, noting the Taxpayer was "not 'engaged in the business' of being forced to relocate." *Id*. Unlike the taxpayer in that case, Young's is engaged in the wholesale business—which includes the transfer of distribution rights—and the compensation resulted from its wholesale business activities, not from an unrelated breach of contract.

Another determination Young's cites is Revenue Determination No. 98-164, where the Department of Transportation (DOT) required utility companies to relocate their facilities because of a state highway reroute. Wash. Dep't of

Revenue, Determination No. 98-164, 19 Wash. Tax Dec. 393, 393-95 (2000). In lieu of eminent domain proceedings, DOT and the companies entered into contracts providing DOT would reimburse the taxpayers for moving costs. *Id*. at 396. The taxpayers maintained the payments were reimbursements not subject to B&O tax. *Id*. at 395. The Board agreed with the taxpayers that the payments from DOT were to mitigate damages and were not subject to taxation. *Id*. at 396-97.

Young's maintains this determination is analogous because it "reinforces that payments received as a result of involuntary action imposed by a third party—even if the amount of such payments were a result of a contractual agreement—are not sufficient to impose B&O tax." But the facts here are distinguishable. That determination was narrowly focused on compensation in lieu of eminent domain proceedings and, like the other determination Young's cited, it did not involve activities related to the taxpayer's business. But, here, transferring distribution rights and receiving compensation is an activity encompassed in the business of wholesale distribution. Because compensation received under RCW 19.126.040 is "accrued by reason of the transaction of the business," the payments were properly classified as gross income of the business and subject to B&O tax. Accordingly, we affirm the Board's decision that the payments were subject to B&O tax.

2. Tax Classification

Young's claims that, even if the compensation received was by reason of taxable business activity, the activity should be taxed as either (1) a casual or

13

isolated sale or (2) wholesaling activity.  The Department contends the Board correctly identified that the payments should be taxed under the "service and other activities" rate.  We agree with the Department.

### a. Casual or Isolated Sale

For purposes of B&O tax, a sale is "any transfer of the ownership of, title to, or possession of property for a valuable consideration."  RCW 82.04.040(1). A "casual or isolated sale" is "a sale made by a person who is not engaged in the business of selling the type of property involved."  RCW 82.04.040(2).  "Any sales which are routine and continuous must be considered to be an integral part of the business operation and are not casual or isolated sales."  WAC 458-20-106.  When a business engages in a "casual or isolated sale," B&O tax does not apply.  WAC 458-20-106.

Here, Young's did not sell its distribution rights to Southern because it did not have any distribution rights to sell.  Once the supplier terminated its contract with Young's, Young's was no longer in "possession" of the distribution rights. Both the brand transfer agreement and the Franchise Act include language that distinguishes when a sale occurs versus when a transfer occurs.  For example, when discussing the transfer of distribution rights, the brand transfer agreement states,

> [A]ny amount paid to the Prior Distributor by a Supplier in connection with the termination of the Prior Distributor's distribution rights as a termination fee or other express compensation for termination pursuant to a written agreement between the Prior Distributor and such Supplier will be credited against the FMV Price.

14

But when talking about inventory still held by the prior distributor, the agreement states, "The New Distributor will *purchase*, and the Prior Distributor will *sell* the Prior Distributor's" inventory.  (Emphasis added.)  If the compensation paid to the prior distributor for the distribution rights was a sale, the agreement would indicate the previous distributor must sell the distribution rights, as it did with the inventory.  RCW 19.126.040 also recognizes the distinction between sale of distribution rights and compensation paid for distribution rights.  *Compare* RCW 19.126.040(3) ("The wholesale distributor may sell or transfer its business . . . ."), *with* RCW 19.126.040(5) ("[A] successor distributor must compensate the terminated distributor for the fair market value of the terminated distributor's rights to distribute the brand.").  Accordingly, the compensation Young's received was not the result of a sale.  Because we find a sale did not occur, we do not address the issue of "casual or isolated sale."

       b.   *Wholesaling / Service and Other Activities*

Young's asserts that if the transfer of distribution rights is not a sale, the compensation should be taxed under the "tax on wholesalers" rate.  The Department maintains the compensation payments should be taxed under the "service and other activities" rate.  We agree with the Department.

The "tax on wholesalers" applies to "every person engaging within [Washington] in the business of making sales at wholesale" and "as to such persons the amount of tax with respect to such business shall be equal to the gross proceeds of sales of such business multiplied by the rate of 0.484 percent." RCW 82.04.270.  The "tax on service and other activities" applies to "every

15

person engaging within [Washington] in any business activity other than or in addition to an activity taxed explicitly under another section in this chapter . . . ; as to such persons the amount of tax on account of such activities is equal to the gross income of the business multiplied by the rate of 1.75 percent." RCW 82.04.290(2)(i). This "catchall" provision includes "any type of business activity or service 'which does not constitute a sale at retail or a sale at wholesale' " *Klein*, 183 Wn.2d at 897 (internal quotation marks omitted) (quoting RCW 82.04.290(2)(a),(b)).

Young's contends that because the Board determined Young's received the compensation because it "operat[es] as a wholesaler distributor of alcoholic beverages," the wholesaling rate of 0.484 percent must apply. This contention assumes that all wholesale distribution activity is taxed similarly. But B&O tax applies at different rates for different activities. *Klein*, 183 Wn.2d at 897.

The "tax on wholesalers" applies to the activity of "making sales at wholesale"; if a wholesale distributor is engaged in activity other than making sales, the "services and other activities" designation applies. *See Klein*, 183 Wn.2d at 897. Because transferring distribution rights is not a "sale at wholesale," the wholesale tax rate does not apply to the compensation received by Young's. *See, e.g.*, *Klein*, 183 Wn.2d at 899.

In *Steven Klein, Inc. v. Department of Revenue*, a car dealership, Klein Honda, received incentive payments ("dealer cash") for selling certain car models during specific time periods. 184 Wn. App. 344, 347-48, 336 P.3d 663 (2014), *aff'd*, 183 Wn.2d 889, 357 P.3d 59 (2015). This court held the payments were

16

subject to B&O tax because Klein received the payments "in the course of conducting its auto dealership business" and the payments were "connected to a business activity." *Klein*, 184 Wn. App. at 353. We also held participation in the dealer cash program was "a discrete business activity beyond the mere retail sale of those vehicles." *Id*. Because the activity was in addition to Klein's retail sales, the court determined the payments were appropriately taxed under the "service and other activities" classification. *Id*. The Washington Supreme Court affirmed our ruling that the incentive payments were gross income of the business and subject to B&O tax under the "services and other activities" classification. *Klein*, 183 Wn.2d at 902.

Young's contends Klein is not analogous because to receive dealer cash Klein had to engage in a discrete business activity—selling certain cars during specific times—whereas, here, Young's distribution rights were unilaterally terminated. Young's re-raises its argument that it did not engage in a business activity and, even if it did, the activity was not discrete from wholesale sales. As discussed supra, Young's did engage in a business activity discrete from wholesale sales. And, despite Young's not initiating the activity that resulted in the transfer of distribution rights and receiving compensation, Young's still realized a gain/benefit (i.e., compensation payments) from the activity.

Additionally, while transferring distribution rights is an activity within the wholesale business, it is not a wholesale sale. In *Klein*, the Supreme Court noted, "although Klein Honda must sell a car to a customer to be eligible for dealer cash, the dealer cash program is a distinct program that provides Klein

17

Honda with income in addition to its income from retail sales through a separate contract with another party." 183 Wn.2d at 899. Similarly, transferring distribution rights is a distinct activity from wholesale sales and, therefore, the compensation should be taxed under RCW 82.04.290. We conclude the Board correctly determined the compensation payments were subject to the "service and other activities" rate.

We affirm.

_Smith, J._

WE CONCUR:

_Feldman, J._          _Chung, J._