242 P.3d 810 (2010)
TRACFONE WIRELESS, INC., Appellant,
v.
WASHINGTON DEPARTMENT OF REVENUE, Respondent.
No. 82741-9.
Supreme Court of Washington, En Banc.
Argued November 10, 2010.
Decided October 28, 2010.
*812 Scott M. Edwards, Lane Powell P.C., Seattle, WA, for Appellant.
David M. Hankins, Brett S. Durbin, Office of the Attorney General, Olympia, WA, for Respondent.
Stephen Alan Smith, K & L Gates, L.L.P., Seattle, WA, amicus counsel for T-Mobile USA, Inc.
MADSEN, C.J.
¶ 1 At issue is whether the state enhanced 911 excise tax (state E-911 excise tax) used to fund emergency communications systems in Washington State must be paid on prepaid wireless cellular telephone (cell phone) service. TracFone Wireless, Inc. (TracFone) filed this tax refund suit contesting the Washington State Department of Revenue's (Department) determination that the E-911 tax must be paid on its wireless cell phone service. We conclude that the plain language of the relevant statutes imposes the tax on prepaid wireless cell phone service and accordingly uphold the trial court's grant of summary judgment in favor of the Department.

FACTS
¶ 2 TracFone sells cell phones and prepaid wireless telephone services. It does not own or operate any wireless network facilities but instead contracts with other radio communication service companies to provide wireless telephone service and radio access lines and then resells the service. As of 2004, TracFone provided wireless service by reselling service offered by more than 35 licensed network operations in the United States. TracFone's prepaid wireless services and handsets are sold through more than 70,000 retail locations in this country, as well as through its Internet site. Approximately 30,000 cell phones are sold in this fashion every month.
¶ 3 The retailers also sell airtime cards for use with TracFone's cell phones. These *813 cards have no value until activated upon sale to the subscriber. Activation requires that the subscriber provide TracFone with the cell phone's serial number and the zip code in which the subscriber will primarily use the cell phone. TracFone chooses an underlying carrier for the area and sends a code to the cell phone that programs it with the correct home area, telephone number, and rating information. Once a TracFone cell phone is active, a subscriber may purchase additional airtime minute cards in increments of 30 to 400 minutes or by contacting TracFone and adding additional time. TracFone retains the right to modify or cancel the service for any reason at any time.
¶ 4 A TracFone cell phone has a service end date. TracFone contacts its subscribers to notify them of pending end dates. Airtime minutes must be used prior to expiration of the service end date or they expire. If minutes are not used and no new minutes are added prior to expiration, the service is deactivated. For example, the service period for a 60 minute airtime card is 90 days. If the subscriber does not add additional minutes prior to the service end date, 90 days after activation, the cell phone is deactivated and any remaining minutes are lost. If the subscriber does purchase additional airtime prior to the service end date, the end date is extended by the service period that applies for the number of minutes added.
¶ 5 If minutes are used before the end of the service period, the telephone number for the subscriber's cell phone remains assigned to that subscriber. TracFone deactivates the service only when additional minutes are not added before the service period expires.[1]
¶ 6 In 1981, the legislature authorized counties to impose an excise tax on the use of telephone access lines to fund emergency communications services. LAWS OF 1981, ch. 160, § 3. In 1991, the voters approved Referendum 42, which imposed a uniform statewide tax on each switched access telephone line, i.e., landline telephone service, to fund statewide coordination and management of the E-911 system. LAWS OF 1991, ch. 54, § 11. In 1994, the legislature found that the volume of 911 calls by users of cellular and other wireless communications systems had increased but these users did not use switched access lines and so were not subject to the E-911 tax. LAWS OF 1994, ch. 96, § 1. The legislature extended the county E-911 excise tax to cell phones. Id. §§ 2-4 (amending RCW 82.14B.020-.040).
¶ 7 In 2002, the legislature increased the county tax and expanded the state excise tax to 20 cents per month per radio access line. Laws of 2002, ch. 341, §§ 8-9 (amending RCW 82.14B.030-.040). The House Bill Report on H.B. 2595, the enacting legislation, described changes in the cellular industry and problems resulting from concurrent jurisdiction of county, state, and federal governments. To explain the need for taxation of wireless phones, the report noted these examples:
In central Washington, a 911 call might be answered by a dispatcher in Okanogan, Grant, or Chelan County. There are instances where emergency assistance has been dispatched to Long Beach when the incident is really in Ocean Park. Technology is available to pin down the location of the caller.
Cellular calls to 911 centers take three times as long to process to determine the location of the caller under our current systems. But cellular use is increasing; 36 percent of 911 calls come from cell phones. As the number of these calls increase, and as the number of wireline calls decrease, revenues are declining.
H.B. Rep. on H.B. 2595, at 3-4, 57th Leg., Reg. Sess. (Wash. 2002). The purposes of the state E-911 excise tax on radio access lines are to promote public safety and ensure adequate funding to support E-911 services. RCW 38.52.501. The law became effective on January 1, 2003, and imposed a county and state E-911 tax on "all radio access lines whose place of primary use is located within the state." LAWS OF 2002, ch. 341, § 15; RCW 82.14B.030(2), (4).
¶ 8 The state E-911 excise was originally paid on TracFone's service in 2003; however, *814 TracFone states that when it discovered that the company preparing its tax returns had paid amounts reported as the Washington E-911 tax for part of 2003, TracFone stopped further payments. It has not collected the state E-911 excise tax from its subscribers. The Department then assessed TracFone for state E-911 excise taxes for the last quarter of the year and instructed TracFone to begin collecting the monthly tax from its subscribers. TracFone paid the estimated assessment, and then commenced this suit to recover the amounts paid and contest further payments of the tax.
¶ 9 Both parties moved for summary judgment. The trial court granted the Department's motion and dismissed the lawsuit. We granted direct review.

ANALYSIS
¶ 10 This matter is before us for review of the trial court's grant of summary judgment. A court reviews a grant of summary judgment de novo, engaging in the same inquiry as the trial court. Lallas v. Skagit County, 167 Wash.2d 861, 864, 225 P.3d 910 (2009); Wilson v. Steinbach, 98 Wash.2d 434, 437, 656 P.2d 1030 (1982). Summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c).
¶ 11 Whether the trial court properly granted summary judgment depends upon the meaning of various statutes providing for assessment and payment of the state E-911 excise tax. Statutory interpretation is a question of law, reviewed de novo. Lake v. Woodcreek Homeowners Ass'n, 169 Wash.2d 516, 526, 229 P.3d 791 (2010).
¶ 12 A court's goal in construing a statute is to determine and give effect to the legislature's intent. Id.; Dep't of Ecology v. Campbell & Gwinn, LLC, 146 Wash.2d 1, 9-10, 43 P.3d 4 (2002). If the statute's meaning is plain on its face, we give effect to that plain meaning as the expression of what was intended. Campbell & Gwinn, 146 Wash.2d at 9-10, 43 P.3d 4. "The plain meaning of a statute may be discerned `from all that the Legislature has said in the statute and related statutes which disclose legislative intent about the provision in question.'" State v. J.P., 149 Wash.2d 444, 450, 69 P.3d 318 (2003) (quoting Campbell & Gwinn, 146 Wash.2d at 11, 43 P.3d 4). We look to "`the ordinary meaning of the language at issue, the context of the statute in which the provision is found, related provisions, and the statutory scheme as a whole.'" Lake, 169 Wash.2d at 526, 229 P.3d 791 (quoting State v. Engel, 166 Wash.2d 572, 578, 210 P.3d 1007 (2009)).
¶ 13 TracFone contends that the statutes governing the state E-911 tax[2] do not apply to prepaid wireless subscribers.
¶ 14 RCW 82.14B.030(4) (2003) states in part:
A state enhanced 911 excise tax is imposed on all radio access lines whose place of primary use is located within the state in an amount of twenty cents per month for each radio access line. The tax shall be uniform for each radio access line. The tax imposed under this section shall be remitted to the department of revenue by radio communications service companies, including those companies that resell radio access lines, on a tax return provided by the department.
(Emphasis added.) A "radio access line" is "the telephone number assigned to or used by a subscriber for two-way local wireless voice service available to the public for hire from a radio communications service company." RCW 82.14B.020(5). TracFone prepaid wireless is a "two-way local wireless voice service available to the public for hire from a radio communications service company"[3] and the telephone number assigned to/used *815 by a TracFone subscriber is a "radio access line" within the meaning of RCW 82.14B.020(5). RCW 82.14B.030(4) says that the tax must be remitted to the Department of Revenue by radio communications service companies, "including those companies that resell radio access lines." TracFone buys up airtime from other companies and sells it under its own name to its customers, clearly bringing TracFone's business within the scope of the statutes.
¶ 15 RCW 82.14B.020(8) defines "subscriber" as the retail purchaser of telephone service.
¶ 16 The statutes contemplate that the state E-911 tax will be collected by the radio communications service company (TracFone) from the subscribers (the retail purchasers), as directed in RCW 82.14B.040 and .042. However, RCW 82.14B.042(2) states that the radio services communication company is liable for the state E-911 excise tax if this tax is not collected as provided in the chapter, or not paid over to the Department of Revenue.
¶ 17 By its plain language, RCW 82.14B.030(4) imposes the state E-911 excise tax on TracFone's cell phone service. The statute unambiguously states that the E-911 tax is "imposed on all radio access lines whose place of primary use is located within the state." (Emphasis added.) Use of the word "all" shows legislative intent that each and every radio access line (telephone number) be taxed, whether the service is telephone service or cell phone service, without implied exceptions. See Griffin v. Thurston County, 165 Wash.2d 50, 57, 196 P.3d 141 (2008); Parkridge Assocs., Ltd. v. Ledcor Indus., Inc., 113 Wash.App. 592, 602, 54 P.3d 225 (2002).
¶ 18 TracFone contends, however, that various statutory provisions show that the tax is inapplicable to prepaid wireless. TracFone's arguments are premised chiefly on the way in which it conducts its business, marketing its wireless service as prepaid service involving the sale of blocks of airtime minutes, rather than as traditional, billed wireless service. In effect, TracFone is seeking a decision that whether the tax is owed depends upon how a company decides to market and charge for its service or, to put it another way, whether the tax must be paid depends entirely upon the individual company's business model.
¶ 19 However, the language of RCW 82.14B.030(4) establishes that the legislature certainly intended that cell phone service be subject to the state E-911 excise tax. Whether prepaid or not, cell phone service is what is involved in this case. The plain language of the controlling statutes requires payment of the state E-911 excise tax on TracFone's prepaid wireless service.
¶ 20 We do not find compelling any of TracFone's arguments to the contrary. First, TracFone maintains that RCW 82.14B.030(4)'s imposition of tax on radio access lines whose "place of primary use" is within Washington State does not include prepaid wireless service. TracFone points out that the applicable definition of "place of primary use" in former RCW 82.14B.020(9) (2003) was incorporated from the federal Mobile Telecommunications Sourcing Act (MTSA), Pub.L. No. 106-252, 114 Stat. 626 (2000). Former RCW 82.14B.020(9) provided: "`Place of primary use' has the meaning ascribed to it in the federal mobile telecommunications sourcing act, P.L. 106-252."[4] The MTSA defines "place of primary use" as: "the street address representative of where the customer's use of the mobile telecommunications *816 service primarily occurs, which must be(A) the residential street address or the primary business street address of the customer; and (B) within the licensed service area of the home service provider." Pub.L. No. 106-252, § 2(a) (§ 124(8)) (4 U.S.C. § 124(8)). By its terms, the MTSA does not apply to the taxing situs of prepaid telephone calling services. Pub.L. No. 106-252, § 2(a) (§ 116(c)(1)) (4 U.S.C. § 116(c)(1)).
¶ 21 TracFone contends that when the legislature incorporated the definition of "place of primary use" in the MTSA, it "adopted the MTSA" for taxation of prepaid wireless. Then, TracFone continues, because the MTSA excepts prepaid wireless, prepaid wireless is not subject to the state E-911 excise tax.
¶ 22 We do not agree. Former RCW 82.14B.020(9) was a reference statute, in that it adopted by reference part of the MTSA. Therefore, "[t]he terms referred to, and only those terms, must be treated as if they were incorporated into the referring act" or statute. Int'l Export Corp. v. Clallam County, 36 Wash.App. 56, 57-58, 671 P.2d 806 (1983) (citing Knowles v. Holly, 82 Wash.2d 694, 513 P.2d 18 (1973)); accord Wenatchee Fed. Sav. & Loan Ass'n v. Mission Ridge Estates, 80 Wash.2d 749, 753-54, 498 P.2d 841 (1972) (one claiming a lien for engineering services under chapter 60.48 RCW was required by former RCW 60.48.020 (1991) to refer to former RCW 60.04.040 (1975); however, as provided in the referencing statute the incorporation was only for the limited purpose of the procedural steps to perfect the lien and did not include any other matters addressed in the statute incorporated by reference); State ex rel. Wash. Toll Bridge Auth. v. Yelle, 32 Wash.2d 13, 28-31, 200 P.2d 467 (1948).
¶ 23 The MTSA does not mention prepaid wireless in its definition of "place of primary use." See Pub.L. No. 106-252, § 2(a) (§ 124(8)) (4 U.S.C. § 124(8)). Rather, the exclusion of prepaid services from the MTSA is found at the outset of the act where, as explained, Congress provided that the act does not apply to the determination of prepaid telephone calling services. See Pub.L. No. 106-252, § 2(a) (§ 116(c)(1)) (4 U.S.C. § 116(c)(1)).
¶ 24 The state legislature expressly incorporated only the MTSA definition of "place of primary use." Former RCW 82.14B.020(9) ("`[p]lace of primary use' has the meaning ascribed to it" in the MTSA). That is the extent of the incorporation. Incorporating the definition of "place of primary use" did not incorporate any other provision of the MTSA.[5]
¶ 25 The requirement that the tax is due on radio access lines whose place of primary use is located within Washington is satisfied. We acknowledge, as does the Department, that TracFone does not obtain the street address representative where the subscriber's use of the cell phone primarily occurs.[6] But while TracFone has not required much in the way of personal information for its prepaid wireless service, it does require, at a minimum, the zip code of the place where the phone will be primarily used. For those cell phones for which a Washington State zip code is provided, the place of primary use is sufficiently shown to be within Washington State.
¶ 26 Next, TracFone argues that RCW 82.14B.030(4)'s requirement that the tax be "uniform" cannot be satisfied in the case of its prepaid wireless service. TracFone maintains that the statute imposes a flat rate tax of 20 cents per month and this is a rate that cannot be calculated on prepaid *817 wireless service because the service is sold in block airtime minutes and not by the month. TracFone believes that the uniformity requirement cannot be satisfied because the subscriber pays in advance, it is not possible to tell how many months it will take for a given subscriber to use the minutes purchased, and different subscribers will use their minutes at different rates.
¶ 27 This argument misapprehends what is being taxed. RCW 82.14B.030(4) provides that the state E-911 "excise tax is imposed on all radio access lines." (Emphasis added.) To reiterate, a radio access line is defined as "the telephone number assigned to or used by a subscriber for two-way local wireless voice service available to the public for hire from a radio communications service company." RCW 82.14B.020(5) (emphasis added). If a subscriber has a cellular telephone number assigned to the subscriber or used by the subscriber, the tax must be paid. The tax is not imposed on the sale of airtime minutes nor is the tax based upon the number or rate of minutes purchased or used in a month. Further, the statutes do not require that the tax be imposed as a point of sale tax.
¶ 28 Rather, the state E-911 excise tax is required to be collected if the subscriber has a cell phone number. TracFone's prepaid cellular service plans involve both airtime cards or airtime minutes with a certain fixed number of minutes and a fixed service period that begins to run when airtime is added to the cell phone. Regardless of when (or whether) the minutes are used, the service period is a set period of time. If the minutes are used before the end of the service period expires, additional minutes can be added, but regardless of whether they are, the cellular telephone number remains assigned to the subscriber for the service period. Each time airtime is added, the service period is extended, again as a fixed, definite period of time, and the cellular telephone number continues to be assigned to the subscriber. TracFone deactivates the service only if, and when, the subscriber does not add minutes before a service period expires. That, too, is an ascertainable point in time. (Although a subscriber can purchase a new airtime card or airtime minutes within 60 days of deactivation and thereby keep any unused minutes remaining when a service period expires, the subscriber is then assigned a new telephone number.)
¶ 29 Under these prepaid plans, therefore, there is an identifiable service period when there is an existing telephone number assigned to or used by the subscriber, regardless of the minutes purchased or used. For each month the service period exists or is extended, the state E-911 excise tax must be paid at the rate of 20 cents a month. TracFone knows the service periods for its subscribers, and it knows the end dates for these service periods. TracFone can therefore determine whether an assigned number is active in a given month and can calculate the tax due. TracFone's arguments, which are focused on numbers of minutes purchased and the rate at which they are used do not reflect the statutes' taxation of telephone numbers for the months that they are active.
¶ 30 With the correct focus, it is apparent that TracFone's argument is unfounded. RCW 82.14B.030(4) requires that the state E-911 excise tax be imposed on "all radio access lines" and also states that "[t]he tax shall be uniform for each radio access line." (Emphasis added.) Uniformity, as with the tax itself, is therefore concerned with access lines, not with how many minutes are used or the rate at which they are used. Uniformity means that the 911 tax must be assessed at the same rate for each access line throughout the state. There are no exceptions and the tax applies to all radio communications service companies that provide radio access lines.
¶ 31 As thus defined, uniformity is not the insurmountable problem that TracFone claims. Under RCW 82.14B.030(4), the tax is imposed on a radio access line at the rate of 20 cents per month. As explained, TracFone knows whether an access line with a zip code in this state is active in any given month.[7] TracFone can therefore readily calculate *818 the tax for any given month. Provided that the tax is determined at the rate of 20 cents per month for all subscribers with active cellular phone numbers, uniformity is achieved. That is all that the statute requires. It makes no difference how many minutes are used, how fast they are used, or whether two subscribers with the same number of minutes use them at different rates. There is no bar to an accurate and uniform calculation of the amount of tax.[8]
¶ 32 TracFone next argues, however, that the tax must be collected from the subscriber and since TracFone does not collect from its subscribers the tax is not due. We agree that the statutes contemplate collection of the tax from the subscriber. RCW 82.14B.040 says that the state E-911 excise tax on radio access lines "shall be collected from the subscriber by the radio communications service company providing the radio access line to the subscriber." See also RCW 82.14B.042. We do not agree, however, that the manner in which a clearly taxable event (an assigned cell phone number) is marketed can negate a tax that is otherwise clearly payable. Any difficulty in collecting the tax from the subscriber is due to TracFone's choice of business model.
¶ 33 Moreover, and in any event, any difficulty collecting from subscribers is not a bar to imposition and payment of the state E-911 excise tax. The legislature expressly provided a way in which the tax can be assessed and paid if the radio communication services company does not collect it from the subscribers. That is, although the statutes do provide for collection of the tax from the subscriber, they additionally and expressly allow for the tax to be paid by TracFone if it is not collected from the subscriber. RCW 82.14B.042(2) states that the radio services communication company is liable for the state E-911 excise tax if this tax is not collected as provided in the chapter, or not paid over to the Department of Revenue. This means that if, because of the way in which a company elects to do business, the tax cannot be uniformly collected from the subscribers, the tax can still be calculated in compliance with the uniformity mandate and paid by the radio communication service company in conformity with the statutes.[9]
¶ 34 TracFone points out that RCW 82.14B.040 provides that "[t]he amount of the tax shall be stated separately on the billing statement which is sent to the subscriber," and that RCW 82.14B.042(3) states that "[t]he state enhanced 911 excise taxes required by this chapter to be collected ... must be stated separately on the billing statement that is sent to the subscriber." TracFone contends that this method of collecting the tax is not applicable to prepaid wireless, which has no subscriber billing statements because the charge for the service is prepaid. TracFone argues that this *819 shows that the legislature did not intend that the tax be applied to prepaid wireless service.
¶ 35 TracFone's heavy reliance on these provisions is misplaced. The words "shall" and "must" in the statutes modify "be stated separately." While this language shows legislative intent that the tax is to be stated separately in a billing statement, neither statute requires that a statement must be sent. If a monthly statement is sent, the tax must be stated separately,[10] but if a company does not send monthly billing statements, the directive has no further significance. As the department appropriately maintains, the taxable event does not change merely because a radio communications company does not mail out billing statements. The fact that TracFone does not send monthly billing statements is a consequence of the way in which it chooses to conduct its business. It does not relieve TracFone of its obligations under the taxing statutes nor does it convert a plainly taxable event into a nontaxable event.
¶ 36 TracFone contends, however, that the Department has failed to explain how it can collect the tax and thus is in violation of RCW 82.32A.020(5), which states that the taxpayer has "[t]he right to receive, upon request, clear and current tax instructions, rules, procedures, forms, and other tax information." We do not agree with TracFone's apparent, implicit argument that the tax is not owed if the Department does not tell TracFone specifically how to collect the tax for prepaid service, which TracFone believes must be based upon the prepaid minutes not correlated with monthly use.
¶ 37 As explained, however, the tax is not imposed on the minutes purchased or used, but rather is a monthly rate on radio access lines (telephone numbers). Further, the Department advised TracFone that it had an obligation to collect the tax and so met its responsibility under RCW 82.32A.020(5). As the Department correctly states, it is not required to explain to TracFone how to conduct its business in order to comply with the tax collection obligation.[11]
¶ 38 TracFone also contends that because RCW 82.14B.042 subjects a radio communications service company to criminal penalties, the Department's "inability" to explain how a seller of prepaid services can collect the tax from retail purchasers renders the statute unconstitutionally vague. We disagree.
A statute is unconstitutionally vague if it "(1) ... does not define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is proscribed, or (2) ... does not provide ascertainable standards of guilt to protect against arbitrary enforcement." [City of Spokane v. Douglass, 115 Wash.2d 171, 178, 795 P.2d 693 (1990)] (citing Kolender v. Lawson, 461 U.S. 352, 357, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983)). If either of these requirements is not satisfied, the ordinance is unconstitutionally vague.
State v. Bahl, 164 Wash.2d 739, 752-53, 193 P.3d 678 (2008) (first and second alterations in original).
¶ 39 RCW 82.14B.042(1) provides in relevant part that "[a]ny local exchange company or radio communications service company that appropriates or converts the tax collected to its own use or to any use other than the payment of the tax to the extent that the money collected is not available for payment on the due date as prescribed in this chapter is guilty of a gross misdemeanor." RCW 82.14B.042(3) provides in relevant part that "[a]ny local exchange company or radio communications service company that fails or refuses to collect the tax as required with intent to violate the provisions of this chapter or to gain some advantage or benefit, either direct or indirect, and any subscriber who refuses to pay any tax due under this chapter is guilty of a misdemeanor."
¶ 40 TracFone's argument that RCW 82.14B.042 is unconstitutionally vague if the *820 Department does not explain how it can collect the tax from the subscribers is tenuous at best. On its face, the statute is clear about what constitutes the proscribed conduct and, indeed, TracFone's complaint is not about what is proscribed. Rather, TracFone's complaint goes to how it can comply with the statute. But, as mentioned, the problem about which TracFone complains is the difficulty in calculating and collecting the tax because the number of minutes purchased or used does not correlate to monthly use. But as explained the tax is not imposed on the minutes purchased or used, and the Department clearly has no obligation to explain how to improperly collect the tax.
¶ 41 Second, the statute is not vague in terms of what must be done. Either TracFone must collect and pay over to the Department the taxes, or it must pay them itself. What it must not do is convert or appropriate taxes it has collected to its own use or to a use other than payment of the taxes, or refuse or fail to collect them with intent to violate the taxing statutes or to obtain an advantage or benefit.
¶ 42 Lastly, the Department has in fact suggested various ways for TracFone to collect the tax from its subscribers at the statutory flat monthly rate of taxation such as adjusting its prepaid pricing or deducting minutes from the subscriber's account to pay the taxes, and alternatively suggests that TracFone pay the tax itself, as RCW 82.14B.042(2) requires if the tax is not collected from the subscribers.[12]
¶ 43 TracFone maintains, however, that not collecting the tax from the subscribers and paying the tax itself would subject it and the subscriber to criminal sanctions. This is a spurious argument. RCW 82.14B.042 plainly makes the tax a liability of the company when not collected from the subscriber, but the company is subject to criminal sanctions for failing to pay taxes for which it becomes liable only if, with intent to violate the statutes or to gain an advantage or benefit, the company does not pay the taxes due.
¶ 44 The statute is not unconstitutionally vague. It clearly advises TracFone that if it converts tax monies it has collected from subscribers, or fails or refuses to collect the tax with the intent to violate the taxing statutes or to gain an advantage or benefit, criminal sanctions may be imposed. RCW 82.14B.042(2) also imposes liability for the tax on TracFone if it does not collect the taxes from the subscribers.
¶ 45 TracFone contends, however, that if the taxes are a cost to be borne by prepaid service providers while billed service providers can pass the amount on as a line item in the billing statement, this places the prepaid service provider at a competitive disadvantage in contravention of the federal Telecommunications Act of 1996, 47 U.S.C. § 253(b). 47 U.S.C. § 253(a) and (b) provide:
(a) In general
No State or local statute or regulation, or other State or local legal requirement, may prohibit or have the effect of prohibiting the ability of any entity to provide any interstate or intrastate telecommunications service.
(b) State regulatory authority
Nothing in this section shall affect the ability of a State to impose, on a competitively neutral basis and consistent with section 254 of this title, requirements necessary to preserve and advance universal service, protect the public safety and welfare, ensure the continued quality of telecommunications *821 services, and safeguard the rights of consumers.
TracFone fails to provide much in the way of argument or authority to explain its challenge under § 253(b), and we disagree with its contention. The import of the section is that while a state cannot impose regulations that have the effect of prohibiting an entity from providing interstate or intrastate telecommunications service, states may regulate on a competitively neutral basis. The statutes here treat prepaid wireless service and monthly billed service the sameboth are subject to the state E-911 excise tax. Neither is competitively disadvantaged.[13] And, as the Department points out, if billed service providers must bill for, collect, and remit the tax, while prepaid service providers have no such obligations with regard to the tax, then the prepaid service providers are arguably granted a competitive advantage. But in the absence of adequate argument, we do not further address § 253(b).
¶ 46 In a similar vein, TracFone contends that equal protection mandates are violated if we conclude that TracFone must collect the state E-911 excise tax. It is unclear which statute TracFone believes violates equal protection, whether RCW 82.14B.030(4), which imposes the tax, or RCW 82.14B.040-.042, which concerns collection and payment of the tax. In context, it appears to be the latter, although admittedly it may be the former. In any event, again the argument and authority is insufficient to show a violation.
¶ 47 Finally, TracFone argues that even if it must collect or be liable for the state E-911 excise tax based on its direct sales, it is not responsible for collecting or paying the tax when its sales are to third party retailers who then sell handsets and airtime cards to the subscribers. TracFone relies on RCW 82.14B.042(2), which exempts radio communications companies who have taken from the buyer in good faith a properly executed resale certificate under RCW 82.14B.200. (The latter statute addresses the burden and standard for proving that a sale was made to one who is not a subscriber or not otherwise subject to the tax at the time of sale.) Together, RCW 82.14B.042(2) and.200 provide an exemption when a sale is not made to a subscriber, but to a reseller.[14]
¶ 48 But there is no question here about whether TracFone must collect the tax from the retail stores that sell its handsets and the airtime cards. The retail stores are not subscribersthey are not assigned nor do they use the telephone numbers for the cell phones, nor are they the recipients of the cell phone service provided by TracFone. Simply put, TracFone is not obligated to collect the tax from the retail stores at all and RCW 82.14B.042(2) and .200 are not relevant in the context here. Thus, there is no issue relating to whether TracFone has received proper documentation from the retail stores that exempts TracFone from collecting the tax from these stores.
¶ 49 Moreover, there is also no issue about whether the retail stores must collect any state E-911 excise taxes due from subscribers, who are liable under the statutes in the first instance for the tax. Just as the statutes do not impose the state E-911 tax on retail businesses selling handsets or airtime minutes, they do not impose the obligation to collect the tax on retail businesses because the retail stores are not radio communications service companies that provide radio access lines. See RCW 82.14B.040 ("[t]he state enhanced 911 tax ... on radio access lines shall be collected from the subscriber *822 by the radio communications service company providing the radio access line to the subscriber" (emphasis added)); RCW 82.14B.042(1) ("[t]he state enhanced 911 excise taxes imposed by this chapter must be paid by the subscriber to the ... radio communications service company providing the radio access line" (emphasis added)).
¶ 50 Rather, the statutes place the responsibility for collecting the state E-911 tax from the subscribers on the radio communications companies providing the access lines, here, TracFone. The liability for the tax is placed on the subscribers, here the retail purchasers of the handsets and airtime cards that TracFone sells to the retail stores for the purpose of sales and service to the subscribers.[15]
¶ 51 In summary, there is no ambiguity in the statutes as to what is being taxed, how the tax is to be assessed, or whether the tax is owed. There is no lack of uniformity in calculation and payment of the 911 tax if it is computed and paid by TracFone as described aboveentirely in accord with express statutory provisions.
¶ 52 As the Department of Revenue correctly says, TracFone has effectively asked this court to find an implied exemption for prepaid wireless service. However, "taxation is the rule and exemption is the exception, and where there is an exception, the intention to make one should be expressed in unambiguous terms." Columbia Irrig. Dist. v. Benton County, 149 Wash. 234, 240, 270 P. 813 (1928); accord Homestreet, Inc. v. Dep't of Revenue, 166 Wash.2d 444, 455, 210 P.3d 297 (2009); Budget Rent-A-Car of Wash.-Or., Inc. v. Dep't of Revenue, 81 Wash.2d 171, 174, 500 P.2d 764 (1972). RCW 82.14B.030(4) conclusively imposes the tax on the radio access lines within TracFone's service. To avoid the statute's plain language would require some language of exemption or exception. Belas v. Kiga, 135 Wash.2d 913, 934, 959 P.2d 1037 (1998) (the intent to exempt from taxation must be clear from the language of the statute(s)). Where taxing statutes are concerned, "[e]xemptions may not be created by implication." Id. at 935, 959 P.2d 1037. None of the statutes relied on by TracFone show clear intent to exempt prepaid wireless services from the state E-911 excise tax. To the contrary, the statutes leave no room for doubt that the "excise tax is imposed on all radio access lines." RCW 82.14B.030(4) (emphasis added). The legislature's intent could not be clearer.

CONCLUSION
¶ 53 RCW 82.14B.030(4) states with absolute clarity the intent to tax "all radio access lines." (Emphasis added.) Because TracFone knows the service periods, end dates, and deactivation times for the radio access lines within its prepaid services, it can calculate the amount of tax due, without any problem with uniformity. Moreover, regardless of claimed difficulties in collecting the tax from the subscribers, the tax may lawfully be assessed with payment made by TracFone. RCW 82.14B.042(2) unambiguously makes the provider of the cellular service ultimately responsible for paying the tax if it is not collected from the subscriber.
¶ 54 Regardless of the particular plan a subscriber buys, the legislature intended that cell phone service must be taxed to help fund the enhanced 911 service. The subject of taxation remains the same, regardless of whether paid for through a monthly contract plan or through a prepaid plan like those that TracFone offers. The benefits of the E-911 service are equally available to those who prepay as it is to those who pay on a monthly basis.
WE CONCUR: CHARLES W. JOHNSON, GERRY L. ALEXANDER, SUSAN OWENS, and MARY E. FAIRHURST, Justices.
*823 CHAMBERS, J. (dissenting).
¶ 55 Our role in statutory interpretation is to find the intent of the legislature. Tax statutes are strictly construed, and "[i]f any doubt exists as to the meaning of a taxation statute, the statute must be construed most strongly against the taxing power and in favor of the taxpayer." Ski Acres, Inc. v. Kittitas County, 118 Wash.2d 852, 857, 827 P.2d 1000 (1992) (citing City of Puyallup v. Pac. Nw. Bell Tel. Co., 98 Wash.2d 443, 448, 656 P.2d 1035 (1982)). Based upon the plain language of the relevant statutes, I find no evidence the legislature intended to tax prepaid wireless plans. I concede that these statutes may, through an ambiguous and doubtful reading, be construed to reach prepaid wireless. Because I believe that we should resolve ambiguities against the taxing power, I respectfully dissent.
¶ 56 The majority is correct that the general tax-imposing portion of the chapter uses sweeping language: "[A] state enhanced 911 excise tax is imposed on all radio access lines whose place of primary use is located within the state in an amount of twenty cents per month for each radio access line." RCW 82.14B.030(4) (emphasis added). "`Radio access line' means the telephone number assigned to or used by a subscriber for two-way local wireless voice service available to the public for hire." RCW 82.14B.020(5). That could be construed to reach prepaid wireless phone numbers. However, when interpreting the intent of the legislature, we look at all the legislature has said on the subject. ITT Rayonier, Inc. v. Dalman, 122 Wash.2d 801, 807, 863 P.2d 64 (1993) (citing Donovick v. Seattle-First Nat'l Bank, 111 Wash.2d 413, 415, 757 P.2d 1378 (1988)). The legislature has made the phone subscriber, not the provider, primarily liable for the tax. RCW 82.14B.042(1). This weighs against finding that the legislature intended TracFone Wireless, Inc., to be the taxed entity. More importantly, the legislature has told us how the tax shall be collected:
The state enhanced 911 tax and the county enhanced 911 tax on switched access lines shall be collected from the subscriber by the local exchange company providing the switched access line. The state enhanced 911 tax and the county 911 tax on radio access lines shall be collected from the subscriber by the radio communications service company providing the radio access line to the subscriber. The amount of the tax shall be stated separately on the billing statement which is sent to the subscriber.

RCW 82.14B.040 (emphasis added). This language is mandatory. The bill sent to the customer "shall" state the amount of the tax. But TracFone does not send out billing statements. Customers pay up front for a certain amount of access, not monthly for a subscription. Given that, it is hard to imagine that the legislature intended this tax to apply to prepaid wireless.
¶ 57 Other elements of the statutory schema bolster this conclusion. In addition to the reference to a monthly billing statement, the statute imposes a $0.20 per month flat tax that "shall be uniform for each radio access line." RCW 82.14B.030(4). It is difficult to see how the tax at the flat rate of $0.20 per month can be applied in a "uniform" manner on both access lines provided under the traditional monthly model and access lines utilized under the prepaid model. Again, under the prepaid model, the subscriber pays based upon the minutes used, not the number of months the line is accessed. A prepaid subscriber may purchase three or four cards within one month or one card used over 12 months; if the subscriber was charged $0.20 per card, the former would pay $0.80 per month in E-911 taxes and the latter less than $0.02 per month.
¶ 58 Perhaps most importantly, applying this tax to TracFone violates the principle that a person should not have to guess what is prohibited or required. The law should be written such that every person can reasonably ascertain what is forbidden and what is compulsory. See State v. Miller, 156 Wash.2d 23, 29, 123 P.3d 827 (2005) (citing Oliver Wendell Holmes, The Path of the Law, 10 Harv. L.Rev. 457, 459 (1897)). The legislature has largely codified this principle in the context of tax: taxpayers in Washington have "[t]he right to receive, upon request, clear and current tax instructions, rules, procedures, forms, and other tax information." *824 RCW 82.32A.020(5). TracFone tells us that originally, it was instructed to collect the tax from the customer at the time of sale. And indeed, in 2002, the Washington State Department of Revenue (department) issued a "special notice," which states in part, "Service providers must collect the full amount of the tax and may not prorate the tax when a customer starts or ends service during the month. Sellers of prepaid service and disposable cellular phones must collect the tax at the time of sale." Clerk's Papers at 309 (Washington State Dep't of Revenue, Special Notice: New State Enhanced 911 Tax on Cellular Telephone Service 2 (Nov. 14, 2002)). But as discussed above, it is difficult to see how the tax can be both a uniform flat $0.20 per month and be charged at the point of sale on the prepaid model.[1]
¶ 59 The Department suggests that TracFone should simply pay the tax as an expense of doing business, citing RCW 82.14B.042(2). But the statute expressly requires that the tax "shall" and "must" be collected from the subscriber. See RCW 82.14B.042(1) ("The state enhanced 911 excise taxes imposed by this chapter must be paid by the subscriber to ... the radio communications service company providing the radio access line, and ... each radio communications service company shall collect from the subscriber the full amount of the taxes payable."). The legislature would not have declared that the tax "must" and "shall" be paid by the subscriber if it merely intended to impose the tax on the radio communication company.
¶ 60 Importantly, the legislature knew about prepaid wireless. It could have explicitly included prepaid wireless in the tax statute. It did not. The Department's legislative liaison testified at a deposition that the representatives of the cellular phone companies that assisted the legislature in drafting the bill were aware of prepaid wireless and hoped and intended that it would not be taxed under this bill. Further, other states have enacted specific legislation to tax prepaid wireless phone models for E-911 service. North Carolina, for example, has given the providers of prepaid wireless the choice of either collecting the tax from the subscribers or paying the tax itself based on monthly revenue. N.C. Gen.Stat. § 62A-43(b).[2] Virginia gives providers an additional choice; it may also collect the tax at the point of sale. VA.CODE ANN. § 56-484.17(B). Connecticut explicitly taxes prepaid wireless. CONN. GEN. STAT. § 16-256g(a). Legislatures clearly know how to assess taxes on prepaid wireless. See also NEB.REV.STAT. § 86-457(1)(a); OHIO REV.CODE ANN. § 4931.61(A); OKLA. STAT. tit. 63, § 2843.1(D); 35 PA. CONS.STAT. § 7021.4(b)(4); R.I. GEN. LAWS § 39-1-62; TENN.CODE ANN. § 7-86-108(a)(1)(B)(iv).
¶ 61 This statute does not clearly extend to prepaid wireless. Any ambiguities should be resolved in favor of the taxpayer. Agrilink Foods, Inc. v. Dep't of Revenue, 153 Wash.2d 392, 396-97, 103 P.3d 1226 (2005) (quoting Ski Acres, 118 Wash.2d at 857, 827 P.2d 1000). Read as a whole, the taxing statutes before us are ambiguous. We should not resolve the ambiguity in favor of taxation.
¶ 62 I respectfully dissent.
WE CONCUR: RICHARD B. SANDERS, JAMES M. JOHNSON, and DEBRA L. STEPHENS, Justices.
NOTES
[1] A subscriber can purchase a new airtime card within 60 days of deactivation and thereby keep any minutes that have not been used, but the subscriber is assigned a new telephone number.
[2] The statutes at issue have frequently been amended, most recently in 2010. The 2010 amendments primarily concern extending the E-911 tax to interconnected Voice Over Internet Protocol services. See Laws of 2010, 1st Spec. Sess., ch. 19 (effective October 1, 2010, except for sections 1-3, 5-7, 10-21, and 23, which take effect January 1, 2011 (Laws of 2010, 1st Spec. Sess., ch. 19, § 27)). We address the statutes in effect at the time of the tax periods at issue in this case.
[3] RCW 82.14B.020(6) states that "radio communications service company" has the meaning set forth in RCW 80.04.010, which provides: "`Radio communications service company' includes every corporation, company, association, joint stock association, partnership, and person, their lessees, trustees, or receivers appointed by any court, and every city or town making available facilities to provide radio communications service, radio paging, or cellular communications service for hire, sale, or resale."
[4] In 2007, the legislature amended the definition and as a technical clarification incorporated the definition of "place of primary use" in RCW 82.04.065. Laws of 2007, ch. 54, § 16; see H.B. Rep. on H.B. 1361, 60th Leg., Reg. Sess. (2007). RCW 82.04.065 does not refer to the MTSA. Effective January 1, 2011, the definition will be found in RCW 82.14B.020 without reference to any other law or statute. See Laws of 2010, 1st Spec. Sess., ch. 19, §§ 2, 27. To the extent the reference to the MTSA ever created an issue as to whether prepaid wireless services are subject to the state E-911 excise tax, it no longer does.
[5] Even if the exception in the MTSA were incorporated, we are not convinced this would benefit TracFone. It would at most mean that the definition found in the MTSA would not apply to prepaid telephone calling services. This would not resolve the issue whether prepaid wireless is subject to the state E-911 excise tax; rather, it seemingly would leave undefined the meaning of "place of primary use" with respect to prepaid service.
[6] A radio communications service company cannot defeat the obligation to collect the tax by making the choice not to obtain subscribers' addresses. There appears to be no compelling reason why TracFone could not obtain the subscriber's address when the handset is activated.
[7] It makes no difference that TracFone does not know how many minutes a subscriber uses in a month or how many minutes remain on a prepaid card. Again, the focus is the access line, i.e., the telephone number.
[8] The dissent accepts TracFone's mistaken view of what is being taxed and then parlays this into its own argument that uniformity is lacking. The dissent hypothesizes that a prepaid service subscriber might purchase three or four airtime cards within 1 month and another might buy one card over 12 months, and if both are charged 20 cents per card, the former would pay at a rate of 80 cents per month while the latter would pay at the rate of less than 2 cents a month. Dissent at 3.

The hypothetical completely misstates the taxing event. The number of minutes, or number of cards purchased is irrelevant. As the statutes expressly state, the cell phone number is what is being taxed. All purchases of airtime cards extend the time in which TracFone's subscribers enjoy their active telephone numbers, at the same time extending the number of months for which their cell phone number will be taxed. The tax is imposed on the cell phone number on a monthly basis, as the statutes explicitly state. Under the governing statutes, it would be impossible for two subscribers to be taxed as the dissent proposes.
Only by completely changing the taxing event and the tax rate can the dissent reach its erroneous conclusion that the two hypothetical subscribers are not taxed uniformly.
[9] This certainly does not make TracFone the "taxed entity," as the dissent erroneously suggests. Dissent at 2. It does, however, ensure that the tax that is due is actually paid in the event the radio communications service company fails to collect the tax as the statutes direct. It is readily understandable that the legislature included this provision, because if such a company fails to collect the tax it would be a logistical and fiscal fiasco for the Department to try to collect 20 cents per month from each individual subscriber.
[10] The chief importance of the requirement that the tax be stated separately appears to be notice to the subscriber of the amount of the tax included in the billed amount.
[11] As mentioned below, the Department has, nevertheless, provided suggestions for how TracFone might accomplish this while retaining its practice of selling prepaid cell phone service.
[12] The dissent contends that the taxing scheme is not written in an understandable way and that "it is difficult to see how the tax can be both a uniform flat $0.20 per month and be charged at the point of sale on the prepaid model," as the Department evidently directed in 2002 (but has since rescinded the direction). Dissent at 4. But in fact this is an easily calculated amount and patently uniform. As explained, TracFone's service is sold in blocks of time that carry with them a fixed period of time in which the cell phone number is assigned to the subscriber. All that is necessary is to take this ascertainable period of time, in months, and multiply by twenty cents. This gives the amount that would have to be collected if the radio communications service company chose to collect the tax at the point of sale (though it is not required to do so; the statutes do not impose a point of sale tax). Uniformity is accounted for because all subscribers would pay exactly the same twenty cents for each month their cell phone numbers are active. The number of minutes purchased or used is irrelevant in the calculation.
[13] We suspect that TracFone's argument is connected at least in part to its mistaken premises that the tax is based on minutes used and thus it is difficult to collect the tax from the subscribers. As explained, however, this is not how the tax is to be computed.
[14] TracFone misstates the Department's decision, saying that it assessed TracFone as secondarily liable for taxes owed, on the theory that TracFone failed to comply with the alleged statutory duty to collect the tax from the retail purchaser at the time of sale. Nothing in the Department's written decision, to which TracFone refers, says that the tax must be collected at the time of the retail sale and nothing in the statutes imposes a point of sale tax. RCW 82.14B.200's reference to time of sale concerns whether the buyer is subject to the tax at the time of sale, i.e., whether the buyer's status or characterization at the time of the sale subjects the buyer to the tax, but does not provide that the tax must actually be collected at the time of sale or as a point of sale tax.
[15] As the Department points out, while TracFone distributes handsets and airtime cards through numerous mass market retail stores, TracFone itself provides the use of radio access lines to the subscribers of TracFone's wireless service. As a radio communications service company, TracFone is responsible for activation and assignment of radio access lines to the subscribers. If there are problems requiring service, TracFone, not the retail store, provides the service.
[1] The Department correctly points out that the point of sale is not the time of sale of the prepaid card or minutes by a retailer but the moment of activation of those minutes by the access line provider. Still, the Department fails to explain how this distinction solves the difficulty of applying the flat monthly tax uniformly.
[2] The latter approach is somewhat similar to the department's recommendation that TracFone pay the tax as a cost of doing business based on the number of lines active any particular month.