CONCURRING: GARYE L. VÁSQUEZ, Presiding Judge, and VIRGINIA C. KELLY, Judge.

282 P.3d 1281

**VIRGIN MOBILE USA, LP fka Virgin Mobile USA, LLC, Plaintiff/Appellant,**

v.

**ARIZONA DEPARTMENT OF REVENUE, Defendant/Appellee.**

**No. 1 CA–TX 11–0005.**

Court of Appeals of Arizona, Division 1, Department T.

Aug. 2, 2012.

Snell & Wilmer L.L.P. By Don Bivens, Martha E. Gibbs, Adam E. Lang, Phoenix, and Skadden, Arps, Slate, Meagher & Flom LLP by Charles W. Schwartz (pro hac vice), Houston, Attorneys for Plaintiff/Appellant.

Thomas C. Horne, Attorney General By Scot G. Teasdale, Assistant Attorney General, Phoenix, Attorneys for Defendant/Appellee.

## OPINION

SWANN, Judge.

¶1 Virgin Mobile USA, LP ("Taxpayer") appeals from a summary judgment holding it liable for tax on its prepaid wireless phone services under A.R.S. § 42–5252(A). Finding no genuine dispute of material fact or legal error, we affirm the judgment.

### FACTS AND PROCEDURAL HISTORY

¶2 Taxpayer offers users in Arizona prepaid wireless telephone services. Users purchase Taxpayer's phones, activate those phones on Taxpayer's wireless service, and pay for airtime by "topping up." Users "top up" by funding an account, the balance of which offsets charges for future use of the phones. Users must "top up," i.e., prepay for airtime, at least once every 90 days. If 90 days elapse without the user purchasing any airtime, the user then has 60 days to "top up" before Taxpayer classifies the user's phone number as inactive and removes it from the wireless service.

¶3 Between October 2002 and July 2006, Taxpayer's predecessor (Virgin Mobile USA, LLC) remitted $619,148.86 in Arizona taxes for its prepaid wireless-telephone services pursuant to A.R.S. § 42–5252(A). The tax in § 42–5252(A) is known as "the 911 tax" because it is collected "for the purpose of financing emergency telecommunication services." Taxpayer calculated its 911 tax liability in Arizona based upon how many activated phones in its system had an Arizona area code.

¶4 On October 19, 2006, Taxpayer filed a refund claim with the Arizona Department of Revenue (the "Department"). Taxpayer took the position that § 42–5252 was inapplicable to it as a "prepaid provider of wireless services." The Department denied the re-

fund claim. Taxpayer protested the claim's denial, and the parties litigated the tax's applicability to prepaid wireless services. After an administrative law judge rejected its claim, Taxpayer appealed to the Arizona Tax Court under A.R.S. § 42–1254(C).

¶ 5 The parties filed cross-motions for summary judgment concerning whether Arizona's 911 tax applied to Taxpayer's prepaid services. Ultimately, the tax court held that Taxpayer was liable for the tax under § 42–5252(A). The tax court entered judgment in favor of the Department on March 22, 2011. This appeal followed.

¶ 6 On appeal, Taxpayer contends that the 911 tax does not apply to its prepaid wireless services for three reasons. First, Taxpayer argues that the tax in § 42–5252(A) applies only to statutorily defined "providers," and that it is not such a "provider." Second, it argues that the tax is only applicable to "services that are billed monthly," and that its prepaid services are not so billed. Finally, it argues that for wireless services Arizona law adopts the taxation-situs rules in the Mobile Telecommunications Sourcing Act, which specifically excludes from its situs determination any prepaid wireless services.

## STANDARD OF REVIEW

¶ 7 We review the tax court's grant of summary judgment de novo. *Wilderness World, Inc. v. Dep't of Revenue*, 182 Ariz. 196, 198, 895 P.2d 108, 110 (1995). Summary judgment is warranted when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Ariz. R. Civ. P. 56(c)(1).

## DISCUSSION

### I. TAXPAYER IS A PROVIDER OF WIRELESS SERVICES SUBJECT TO A.R.S. § 42–5252(A).

▊ ¶ 8 A section of statutorily defined terms precedes the 911 tax statute. There, a "provider" is "a public service corporation offering telephone or telecommunications services pursuant to title 40, which provides exchange access services." A.R.S. § 42–

5251(4) (footnote omitted). A "wireless provider," however, is defined as a "supplier of wireless services" (with "wireless services" being defined as "two-way voice commercial mobile radio service as defined by the federal communications commission"). A.R.S. § 42–5251(5), (6).[1]

¶ 9 According to Taxpayer, the distinction between "provider" and "wireless provider" in § 42–5251 is important when reading § 42–5252(A), which begins: "A tax is levied on every *provider* in an amount as follows...." Taxpayer argues that the legislature's use of the term "provider" alone, without adding the term "wireless provider," means that Taxpayer is not subject to § 42–5252(A). The reason, according to Taxpayer's argument, is that the definition in § 42–5251 of "provider" rests on "provid[ing] exchange access services," and Taxpayer provides no such services.

¶ 10 Taxpayer reads the term "provider" in § 42–5252(A) too narrowly. Under A.R.S. § 42–5251(5), " '[w]ireless provider' means a supplier of wireless services." Every person supplying wireless services is a "wireless provider"—whether or not that person might also be a "provider." A full reading of § 42–5252(A), including subsection (1), makes clear that "provider" in this context is the generic term for both "provider" and "wireless provider":

> A tax is levied on *every provider* in an amount as follows: (1) For the fiscal years beginning from and after June 30, 2001 and ending before July 1, 2006, thirty-seven cents per month for *each activated wire and wireless service account* for the purpose of financing emergency telecommunication services.

(Emphases added.)

¶ 11 Taxpayer's attempt to restrict the scope of § 42–5252 to "providers" therefore fails, because when a "provider" activates a wireless account it is by definition acting as a "wireless provider." The statute's stated purpose of subjecting wireless accounts to the tax could never be achieved unless it extended to "wireless providers," and we conclude that it does. We therefore hold

---

1. The definitions contained in § 42–5251 are binding "unless the context otherwise requires."

that Taxpayer's prepaid wireless services are subject to the tax levied under § 42–5252(A).

## II. TAXPAYER CANNOT USE ITS BILLING PRACTICES TO AVOID THE APPLICABILITY OF A.R.S. § 42–5252(A).

¶ 12 Taxpayer argues that § 42–5252 imposes a tax only on services that are billed monthly. And because Taxpayer does not bill each month for its prepaid services, it claims that § 42–5252 does not apply to it.

¶ 13 It is true that the statute computes the 911 tax on a monthly basis. For each activated account, the rate is thirty-seven cents "per month." A.R.S. § 42–5252(A)(1). Each provider must remit the tax amount "monthly." A.R.S. § 42–5253(A). But even if the tax amount and remittance period are expressed in months, it is not true, as Taxpayer contends, that the tax applies only to services billed monthly.[2] Taxpayer tries to reach that conclusion by relying on the definition in § 42–5251 of "customer." According to A.R.S. § 42–5252(C), "[e]ach provider shall state on the invoice to customers a separate line item stating the amount of the tax levied." And customers, according to Taxpayer, are limited by statutory definition to those who receive "bills regularly issued." A.R.S. § 42–5251(1). So if a person is not receiving regularly issued bills in connection with his or her wireless services—as when a person uses Taxpayer's prepaid wireless services—that person is not a "customer" and the wireless services fall outside the scope of § 42–5252(A).

¶ 14 In making that argument, though, Taxpayer reads the definition of "customer" in § 42–5251 selectively. Taxpayer focuses only on what the statute describes as "evidence" that a person is a customer. *See* A.R.S. § 42–5251(1). According to the statute, a "customer" is "a person or entity in whose name telephone or telecommunication services are rendered, as evidenced by a signature on an application or contract for service or by receipt or payment of bills regularly issued in the person's or entity's name." *Id.* Under this definition, a person is

a customer because he or she receives "telephone or telecommunication services," not because he or she receives bills. Looking to the person who receives "bills regularly issued" is simply a reasonable way of identifying who the customer is.

¶ 15 We therefore reach a conclusion other courts have reached: even if Taxpayer does not have customers whom it bills monthly, it is required, as a wireless provider, to calculate and remit the 911 tax monthly. A.R.S. §§ 42–5252(A)(1), 42–5253(A); *cf. Comm'n on State Emergency Commc'ns v. TracFone Wireless, Inc.*, 343 S.W.3d 233, 239–40 (Tex. App.2011) (finding no intent to exclude prepaid wireless telecommunications from the 911 emergency service fee); *TracFone Wireless, Inc. v. Wash. Dep't of Revenue*, 170 Wash.2d 273, 290, ¶ 35, 242 P.3d 810, 819 (2010) (holding that "the taxable event does not change" by virtue of the fact that the telecommunications company "does not send monthly billing statements").

## III. ARIZONA'S INCORPORATION OF THE FEDERAL MOBILE TELE-COMMUNICATIONS SOURCING ACT DOES NOT MAKE THE 911 TAX INAPPLICABLE TO PROVIDERS OF PREPAID WIRELESS SERVICES.

¶ 16 Arizona incorporates into its law the Mobile Telecommunications Sourcing Act ("the MTSA"), codified at 4 U.S.C. §§ 116–126. Under A.R.S. § 42–5034.01(A), any tax levied and collected under chapter 5 of Title 42 (which includes the 911 tax) "relating to mobile telecommunications services" shall be levied and collected pursuant to the MTSA.

¶ 17 Enacted in 2000, the MTSA provides sourcing rules that determine whether "charges for mobile telecommunications services" are subject to a particular "taxing jurisdiction." 4 U.S.C. § 117. That jurisdiction, or situs, is expressed in terms of "the customer's place of primary use." *Id.* By determining the tax situs, these sourcing rules solve a problem that was created by the proliferation of wireless telecommunications:

---

**2.** It would be absurd, for example, to read the statute as exempting from the tax all wireless

providers who billed for their services on a quarterly basis.

wireless phone calls were subject to multiple tax obligations. Leonard J. Kennedy & Heather A. Purcell, *Wandering Along the Road to Competition and Convergence—The Changing CMRS Roadmap*, 56 Fed. Comm. L.J. 489, 521 (2004). But these sourcing rules, by the MTSA's own terms, "do not apply to the determination of the taxing situs of prepaid telephone calling services." 4 U.S.C. § 116(c)(1).

¶ 18 Taxpayer argues that because of A.R.S. § 42–5034.01, the 911 tax can only be levied and collected if Arizona is a taxing situs as defined by the MTSA. And because the MTSA's rules for determining the taxing situs of wireless services specifically exclude any wireless services that are prepaid, Taxpayer claims that its prepaid wireless services are in no way subject to § 42–5252(A).

¶ 19 We disagree with Taxpayer's reasoning. The fact that the MTSA declines to address the tax situs of prepaid wireless services, coupled with the fact that Arizona has adopted the MTSA for taxes relating "to mobile telecommunications services," does not lead to the conclusion that Arizona cannot be a tax situs for any prepaid wireless services. *Cf. TracFone Wireless*, 170 Wash.2d at 285 n. 5, ¶ 24, 242 P.3d at 816 n. 5 (Washington's incorporation of the MTSA prepaid-services exception "would not resolve the issue whether prepaid wireless is subject to the state E–911 excise tax"). It only means that Arizona's tax jurisdiction over those prepaid services rests on some legal basis other than the MTSA.

¶ 20 Nothing in the MTSA prohibits a state from establishing itself as a tax situs for mobile services, and we decline to find that the statute accomplishes such a profound result by mere implication. When the MTSA declares whether Arizona has taxing jurisdiction over postpaid wireless services, Arizona follows that determination. When the MTSA is silent, as it is with respect to prepaid wireless services, Arizona can still tax those services if the services have a nexus to Arizona and if the tax does not run afoul of the Commerce Clause. *Mobil Oil Corp. v. Comm'r of Taxes of Vt.*, 445 U.S. 425, 436–37, 100 S.Ct. 1223, 63 L.Ed.2d 510 (1980); *Goldberg v. Sweet*, 488 U.S. 252, 259, 109 S.Ct. 582, 102 L.Ed.2d 607 (1989). Here, Taxpayer does not challenges the tax on those grounds.

### CONCLUSION

¶ 21 We affirm the tax court's grant of summary judgment in favor of the Department. In addition, we deny Taxpayer's request under A.R.S. § 12–348(B)(1) for attorney's fees on appeal. We award the Department its costs on appeal.

CONCURRING: MICHAEL J. BROWN and JON W. THOMPSON, Judges.